James Harvey
WORTHINGTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01-85-0643-CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 7, 1986.

Roger Knight, Jr., Madisonville, Mac L. Bennett, Jr., Bennett & Bennett, Normangee, for appellant.

Latham Boone, Grimes Co. Dist. Atty., David S. Barron, Grimes Co. Asst. Dist. Atty., Anderson, for appellee.

Before EVANS, C.J., and WARREN and DUGGAN, JJ.

## OPINION

EVANS, Chief Justice.

A jury found the appellant guilty of aggravated robbery and punishment was assessed at 15 years confinement. We affirm.

On December 7, 1983, three black men, Charles Young, Daryl Young, and Christopher Russell, drove from Houston to Iola, Texas, and using guns provided by the appellant, robbed the Iola State Bank. After the robbery, the three men rejoined appellant outside of Iola and returned to Houston.

Two of the robbers, Christopher Russell and Daryl Young, testified for the State in appellant's trial. Both men said that it was appellant's idea to rob the Iola State Bank. On December 7, 1983, the date of the robbery, Russell and the two Young brothers drove with appellant in his red Thunderbird from Houston to Conroe. There, at appellant's suggestion, the men stole a maroon Buick Riviera, which was to be used in the bank robbery. The four men then drove both vehicles from Conroe to Madisonville, with the appellant and one of the Young brothers driving the red Thunderbird and the other Young brother and Christopher Russell driving the stolen Riviera. Once in Madisonville, the men decided a bank robbery was too risky, so they drove the two automobiles from Madisonville to Iola. There, they parked the Riviera on the outskirts of town, and the three black men rode with appellant through the town, to ascertain the location of the Iola State Bank. They then returned to the place where the stolen car was parked, and the appellant removed three guns from the trunk of his Thunderbird and gave them to the other three men. The Young brothers and Russell then drove the Riviera into Iola and, at gun point, robbed the Iola State Bank. The appellant told the three men that he could not participate in the robbery because a friend of his wife was employed by the bank.

On completing the robbery, the three men fled the scene in the stolen Riviera, driving the automobile at a high rate of speed. Two of the men rode in the front seat of the getaway car, and the third "slumped down" in the back seat to hide himself. When the robbers saw appellant's Thunderbird parked on the side of the road outside of Iola, they drove the Riviera through a fence and abandoned it in a nearby field. They then got into the trunk of appellant's car and were driven to appellant's house in Houston, where they divided the stolen money.

One of the accomplice witnesses testified that the appellant was wearing a green and white baseball cap on the day of the robbery.

The appellant first contends that there is insufficient evidence to corroborate the accomplice testimony.

Tex. Code Crim.P.Ann. art. 38.14 (Vernon 1979) provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

Thus, in order to support the appellant's conviction in this case, there must be corroborating evidence, other than the testimony of the accomplice witnesses, which tends to connect the appellant with the offense. *Brooks v. State,* 686 S.W.2d 952 (Tex.Crim.App.1985); *Hardesty v. State,* 656 S.W.2d 73 (Tex.Crim.App.1983).

In determining the sufficiency of the corroborating evidence, we must eliminate from our consideration the testimony of the accomplice witnesses and, by examining the other evidence in the case, ascertain if it is of sufficient incriminating character as to connect the accused with the commission of the offense. If there is such evidence, the corroboration is sufficient. *Brooks,* 686 S.W.2d at 958; *Hardesty,* 656 S.W.2d at 76.

Corroborating evidence will be deemed sufficient if it *tends* to connect the accused with the offense charged, making the accomplice's testimony more likely true than not. *Warren v. State,* 514 S.W.2d 458 (Tex.Crim.App.1974). It is not necessary that the supporting evidence corroborate every aspect of the accomplice's testimony. *Sheffield v. State,* 371 S.W.2d 49 (Tex. Crim.App.1962), *cert. denied,* 375 U.S. 833, 84 S.Ct. 45, 11 L.Ed.2d 63 (1963). Neither is it necessary that the corroboration directly link the accused to the crime or that it be sufficient, in itself, to establish the guilt of the accused. *James v. State,* 538 S.W.2d 414 (Tex.Crim.App.1976).

All facts and circumstances in evidence may be looked to for corroboration, *Brown v. State,* 672 S.W.2d 487 (Tex.Crim. App.1984), and the corroborative evidence may either be circumstantial or direct. *Id.* at 488.

With these standards of review in mind, we consider the corroborating evidence offered by the State.

John Warren, President of the Iola State Bank, testified that the Iola State Bank was robbed by three black men at about 11:45 on the morning of December 7, 1983. All three men were armed and they stole approximately $6,500 in cash. Warren saw them leave the bank in a maroon car and head north on Highway 39.

Jerry Stevens testified that at approximately 11:35 a.m. on December 7, 1983, he was driving his vehicle on Highway 39, just north of Iola. About 500 feet south of the intersection of Highway 39 and Farm to Market Road 1696, he saw a two-tone white over red Ford Thunderbird parked, headed south, on the west side of Highway 39. He noticed that the car had a CB antenna block on the trunk without an antenna on it. At trial he identified a picture of appellant's car as being the car he saw parked on the side of the road, or one exactly like it. He drove on to his ranch, about three miles away, and returned to the intersection 15 to 20 minutes later. He again saw the Thunderbird parked on Highway 39, but this time it was headed north and located 200 to 300 feet north of the intersection. He testified that the car was occupied by the same man he had seen earlier.

According to Stevens, the sole occupant of the Thunderbird was a white male in his middle 50's, with gray hair around his temples, and wearing a green and white cap. Stevens could not positively identify appellant as the same man that he had observed in the car, but he testified that appellant looked "similar to the man."

Stevens further testified that about 3 or 4 minutes before he first saw the white over red car, he saw a maroon Riviera, occupied by three black men, enter Iola on Highway 39, coming from the direction where he later saw the parked Thunderbird. He said that the Riviera turned right

on Main street in Iola, heading toward the bank.

J.D. Acres testified that he lived outside of Iola on Farm to Market Road 1696, and that on December 7, 1983, he was feeding his cattle at several locations in the area. He said that he saw a Ford Thunderbird or LTD parked outside of Iola on three different occasions that day. He first testified that the car was white with a maroon or red top, but he later said that he had been confused and that the color of the car was red with a white top. He said that the third time he passed the vehicle, he noticed a red car parked in a nearby field and saw two black men standing alongside the Thunderbird talking to its occupant. He said the occupant of the Thunderbird had gray hair and was probably 59 or 60 years of age.

James Edward Acres, the son of J.D. Acres, testified that on December 7, 1983, he was helping his father feed cattle but driving in a separate truck. About 10:00 or 10:30 a.m., he noticed "a maroon and white car" with a white man in it, followed by a maroon car occupied by two black men. He said that the occupant of the two-tone car was a white male in his 50's, who had gray hair, and was wearing a green and white baseball cap. He passed the maroon and white car three more times that day, and each time it was parked at a different nearby location.

Donald Brock testified that on December 7, 1983, he was driving along Farm to Market Road 1696 where it intersects with Highway 39. As he approached the intersection, he saw a car driven by two black males going north on Highway 39 at a high rate of speed. He saw their car make a right turn onto Farm to Market Road 1696 and go across the railroad tracks where it almost collided with an approaching train. He later observed the same car sitting in a field that he leased.

Carl Rollins said that he went home to eat lunch about noon on December 7, 1983. His house is located about one mile from the intersection of Highway 39 and Farm to Market Road 1696. He was working on

his truck when he saw a "red looking car" drive into his driveway, then turn quickly around and head "back toward Iola." The car then drove through a fence into a field leased by his employer, Donald Wayne Brock, near the railroad tracks.

James B. Eldridge, the Chief Deputy Sheriff of Leon County, Texas, testified that he arrested the appellant east of Centerville in Leon County on May 3, 1984. He identified the Thunderbird automobile shown in the photograph, which photograph was introduced into evidence, as being the same vehicle the appellant was using at the time of his arrest.

W.F. Quinn, a Texas Ranger, testified that he investigated the Iola State Bank robbery and, during the course of that investigation, arrested Daryl and Charles Young and Christopher Russell. He obtained statements from the men which implicated the appellant, and he later went to the appellant's residence in Houston. There, he took photographs of a Ford Thunderbird parked in appellant's driveway.

The appellant did not testify at the guilt-innocence stage of the trial, but he did present witnesses to support his alibi defense. One of these witnesses, Albert Welsh, testified that appellant told him on December 7, 1983, that he had loaned his Thunderbird to "a couple of boys" to cut wood. Another witness, Marvin Jackson, testified that on December 7, 1983, he placed telephone calls to appellant at appellant's home and talked to appellant on the telephone around 10:30 a.m. and again around 2:00 or 2:30 p.m. He also identified the photograph of the Thunderbird in evidence as the automobile which belonged to the appellant.

During the punishment phase of the trial, the appellant testified that he was 57 years old and lived at the address where the Thunderbird was photographed. He denied involvement in the crime and testified that on the date of the robbery, he had loaned his Thunderbird automobile to Christopher Russell and the Young broth-

ers so that they could go to Corrigan, Texas and split wood for him.

▮ Although the appellant's testimony was presented during the punishment phase of trial, it may be considered in determining whether there was sufficient evidence to connect the appellant to the crime. *DeGarmo v. State,* 691 S.W.2d 657 (Tex. Crim.App.), *cert. denied,* — U.S. —, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985).

The appellant strenuously argues that there is no direct evidence showing his involvement in the robbery, and that the circumstantial evidence is so weak that it is insufficient to corroborate the accomplices' testimony. He asserts that evidence showing his mere presence in the company of the accomplices, shortly before or shortly after the offense, does not constitute sufficient corroboration of their testimony.

▮ Not only does the testimony of the State's witnesses constitute sufficient corroboration of the accomplices' testimony, the appellant's own testimony at the punishment phase of the trial also tends to show his connection with the crime. The appellant admitted that his Thunderbird was one of the two automobiles used by the three accomplices on the day of the robbery. That fact was no longer a matter of conjecture. The only remaining issue was whether the appellant was the same person the witnesses described as the occupant of the Thunderbird near Iola on the day of the robbery. To establish that fact, the State was not required to prove appellant's positive identification by direct evidence. It was sufficient for the State to prove his identity by circumstantial evidence. The corroborating witnesses' testimony showed that the occupant of the Thunderbird had the same physical characteristics as the appellant and that the man was wearing a green and white baseball cap. We conclude that the corroborating evidence tended to connect the appellant to the offense. *See Brown v. State,* 672 S.W.2d 487 (Tex.Crim.App.1984).

We overrule appellant's first three grounds of error.

In his remaining two grounds of error, the appellant contends that he was deprived of due process of law because one of the prosecutors for the State had previously served as the court-appointed attorney for appellant's co-defendant, Harold Young.

Tex.Code Crim.P.Ann. art. 2.01 (Vernon Supp.1986) provides in material part:

Each district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom, *except in cases where he has been, before his election, employed adversely.*

▮ Although the appellant filed a motion to recuse the prosecutor, it does not appear from the record that such motion was ever presented to the court for a ruling. We find nothing presented for review. In addition, the record does not contain any showing that the prosecutor received any confidential information harmful to the appellant's case by virtue of his representation of Harold Young. Thus error, if any, is harmless.

We overrule appellant's fourth and fifth grounds of error.

The judgment of the trial court is affirmed.