**Ross CUNNINGHAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–92–211–CR.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 25, 1993.

Discretionary Review Refused
June 9, 1993.

Jim W. James, James & Torrey, Bryan, for appellant.

Bill R. Turner, Dist. Atty., Margaret Lalk, Asst. Dist. Atty., Bryan, for state.

Before NYE, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant guilty of manufacturing a prohibited weapon. The court assessed punishment at ten years in prison, probated, and a $2,000 fine.

■ Appellant challenges the sufficiency of the evidence in his first two points of error. In reviewing a sufficiency challenge, we must determine whether the evidence supports the conviction as authorized by the charge. *See Arceneaux v. State,* 803 S.W.2d 267, 270–71 (Tex.Crim.App.

1990). The charge in the present case authorized the jury to convict if it found:

from the evidence beyond a reasonable doubt that on or about the 16th day of August, 1990, in Brazos County, Texas, the defendant, ROSS CUNNINGHAM, did intentionally or knowingly manufacture a prohibited weapon, namely an explosive weapon, or ... from the evidence beyond a reasonable doubt that on or about August 16, 1990, in Brazos County, Texas, Charles Poff did intentionally or knowingly manufacture a prohibited weapon, namely an explosive weapon, and that the defendant, ROSS CUNNINGHAM, acting with intent to promote or assist in the commission of that offense, did direct, aid or attempt to aid Charles Poff to commit that offense ...

Appellant argues that the evidence is insufficient to prove that the crime occurred in Brazos County within the statute of limitations period. We review the relevant facts.

Davy Aguilera, an agent for the Bureau of Tobacco, Alcohol, and Firearms in Austin, was introduced to an informant named Ernest Ruiz. On August 16, 1990, Aguilera drove with Ruiz to Elgin where Ruiz introduced Aguilera to a man named Oni Twilley. Aguilera told Twilley that he wanted to buy machine guns, explosives, or pipe bombs to take to Mexico and exchange for drugs. Unaware that Aguilera was an undercover agent, Twilley told Aguilera that he could buy pipe bombs from Charles Poff. Twilley joined Aguilera and Ruiz, and together the men proceeded to Bryan. There Twilley contacted Poff to arrange a meeting for Aguilera. The three proceeded to Showtime Video, Poff's workplace. Poff was unable to meet with them as planned, but he suggested that the three go to Radio Shack, where appellant worked.

When they arrived at Radio Shack, Twilley entered the store and returned shortly thereafter with appellant. Appellant was introduced to Aguilera as the "electronics wizard" who wired detonation devices for bombs. Appellant agreed with this description of his role. Unaware that Aguilera was equipped with a recording device and

was recording their conversation, appellant discussed the bombs' wiring and construction with Aguilera and the others in Aguilera's car. Aguilera testified that appellant admitted having made timers, battery operated devices and to having read about how to make a remote control device for setting off an explosive. Aguilera asked appellant what kind of detonation device appellant made for the bombs he was going to purchase. Appellant stated that the bombs "just had straight wires." Appellant stated that Charles made the bombs and he, appellant, "did the other part," ostensibly referring to the wiring of the bombs. After their conversation, Aguilera, Ruiz, and Twilley returned to the video store. They picked up a key to appellant's apartment and proceeded there, intending to meet Poff.

Once at the apartment, Twilley retrieved two pipe bombs. The bombs were each made of three-quarter inch galvanized pipe, two end caps, and had wires attached to the ends. For approximately twenty-five minutes, the three searched the apartment for battery packs and electrical wire while waiting for Poff to meet them. When he failed to appear, Twilley contacted Poff by telephone. Poff told Twilley where to look in the apartment for the battery pack used to detonate the bombs. When questioned about who made the battery pack, Aguilera's testimony was inconclusive. Yet, he understood from a statement of Twilley's that either Poff or appellant built the battery pack. After locating the battery pack, the men returned to Showtime Video to pay Poff. At that time, Aguilera and Poff discussed plans for future deals. Poff indicated that both he and appellant were involved in making the bombs. Poff told Aguilera that he made the bombs and appellant was able to make timers, detonators and other detonating devices for the bombs. Poff assured Aguilera that he would "take care of" appellant with the money Aguilera paid him for the bombs. The men subsequently left Bryan.

At trial, Ernest Ruiz testified that he was in appellant's apartment twice. On one occasion, appellant told Ruiz that he was the person who wired the bombs. Ruiz understood that Poff was going to pay appellant for wiring the bombs.

■ Appellant first complains that the State failed to prove venue because it never established that the bombs were manufactured in Brazos County. When venue is made an issue in the trial court, failure to prove venue in the county of prosecution constitutes reversible error. *Romay v. State*, 442 S.W.2d 399, 400 (Tex.Crim.App. 1969); *see* Tex.Code Crim.Proc.Ann. art. 13.18 (Vernon 1977). In response, the State contends that this Court should presume venue was proven because appellant did not timely raise the issue in the trial court. The venue presumption which the State relies on is found in Tex.R.App.P. 80(d), which provides:

> The court of appeals shall presume that the venue was proved in the court below ... unless such [matter was] made an issue in the court below, or it otherwise affirmatively appears to the contrary from the record.

The State concedes that appellant raised the issue of venue during closing argument but argues that such action was not timely. The issue thus initially presented is whether appellant's venue argument was timely to raise an issue on venue. Neither party cites authority on this point, and we can find none. Therefore, we review some of the cases that have determined when the issue was or was not timely presented.

■ A plea of "not guilty" does not make an issue of venue for purposes of avoiding the presumption in Rule 80(d) (formerly Tex.Code Crim.Proc. art. 44.24(a)). *Holdridge v. State*, 707 S.W.2d 18, 20–21 (Tex.Crim.App.1986). Nonetheless, a defendant's motion for instructed verdict which specifically challenges the proof of venue timely raises the issue. *Black v. State*, 645 S.W.2d 789, 790 (Tex.Crim.App. 1983). When venue is first challenged in a motion for new trial, the issue is not timely raised. *Gonzales v. State*, 486 S.W.2d 380, 381 (Tex.Crim.App.1972). It thus appears that the issue must at least be raised sometime during trial.

The Court's language in *Romay* is instructive. There, the defendant raised the issue in a motion for instructed verdict, thereby placing the State on notice that venue had not been proven. The Court reversed the conviction, stating that the State offered no further proof after the motion. *Romay*, 442 S.W.2d at 400. It thus appears that if the State is placed on notice that venue has not been proven while it is in a position to correct the evidentiary deficiency by reopening its case, the defendant has timely raised the issue, and the appellate court must review the evidence to determine whether venue was proven.

■ In the present case, appellant clearly raised the venue issue during his jury argument. The State responded to appellant's attack in its argument. The State could have produced evidence following appellant's argument, as TEX.CODE CRIM.PROC. ANN. art. 36.02 (Vernon 1981) provides:

> The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice.

This statute has been construed to mean that a trial judge commits reversible error when he refuses a request to reopen for the purpose of producing relevant and admissible evidence, regardless of its weight or the issue upon which it is offered, so long as the request is timely under the statute and does not threaten to unduly impede the trial. *Rogers v. State*, 774 S.W.2d 247, 263 (Tex.Crim.App.1989), cert. denied, 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989). Although appellant made no motion for instructed verdict raising the issue, nor did he at any time prior to closing argument challenge the sufficiency of the evidence to sustain the allegation of venue in Brazos County, he did "make an issue" regarding venue at a time when the State could have reopened its evidence, just as the State would have been required to do if appellant had made a motion for instructed verdict raising this issue after the State had closed. We acknowledge that permitting a defendant to "raise an issue" regarding venue in jury argument, thereby avoiding the presumption and preserving appellate review of the matter on the merits, may encourage defendants to delay their attacks on the venue deficiency until the evidence is closed, the charge prepared, and arguments begin. It is true, however, that a defendant may delay any sufficiency attack until this time. Venue, being a State's evidentiary burden, should be treated no differently. Accordingly, we find that the appellate presumption does not apply, and we must decide whether the State introduced evidence to prove venue beyond a reasonable doubt.

■ According to the charge in this case, the State was required to prove beyond a reasonable doubt that appellant intentionally or knowingly manufactured a prohibited weapon in Brazos County, Texas or that appellant aided or assisted Charles Poff in the commission of the same offense.[1] We agree with the State, that it met its burden on venue by circumstantial evidence. The standard for reviewing evidentiary sufficiency is the same in circumstantial cases as it is in cases of direct evidence—that is, whether, in viewing the evidence in the light most favorable to the verdict any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App. 1984). While the mere presence of the bombs in appellant's apartment does not conclusively established that the bombs were manufactured there, the record contains more evidence of manufacture than mere presence.

■ At trial, appellant admitted that he knew the bombs were in his apartment, but

---

1. Normally, venue need only be proven by a preponderance of the evidence. Tex.Code Crim. Proc.Ann. art. 13.17 (Vernon 1977); *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex.Crim.App.1981). In this case, however, the trial court's jury charge required the State to prove that the crime occurred in Brazos County "beyond a reasonable doubt." Therefore, the State was bound to prove venue by that standard. *See generally Arceneaux v. State*, 803 S.W.2d at 270–71.

he denied having manufactured any part of them, stating that Poff brought them to his place already assembled. Evidence the State presented on the bombs' construction showed that, while pipe bombs are relatively simple to make, these two bombs had holes drilled through the pipe for wiring. This manner of construction was unusual, was more tedious, more time-consuming, and made the bombs more powerful and dangerous. The State's bomb expert testified that the hole could have been made with a regular hand drill. Appellant admitted that Poff sometimes kept tools in appellant's apartment. The materials used for making the bombs are common and can be found in hardware stores and hobby or model shops. Appellant himself testified that a particular part used in these bombs could be purchased at Playland Toys. The battery pack found in the apartment had been built by either appellant or Poff. It was introduced into evidence and could be considered a component part of the bombs. Both appellant and Charles Poff were students at the time of the alleged offense, and they both worked. The jury could have concluded that the boys' school and work schedules, plus the time-consuming method used in making the pipe bombs, would not have allowed much time for driving in and out of the county to make and transport the pipe bombs.

Further, Aguilera's testimony shows that the entire transaction took place in Bryan, Texas and that Bryan is in Brazos County. Aguilera stated that, in the car on the way to Bryan, Twilley "discussed with me machine guns that Charles Poff could obtain; he discussed with me the bombs and assured me that I was going to obtain two pipe bombs that Charles Poff and Ross Cunningham had made." It is clear that Poff could obtain the machine guns from a source at some future time, but the pipe bombs would be *immediately* available in Bryan *because Poff and appellant made them.* Appellant's knowledge of the actual wiring of the bombs in question reveals a knowledge of their construction which could have come from his actual participation in the manufacture.

Had the pipe bombs been made elsewhere, why would it have been necessary to transport them to Brazos County so that an informant in Austin could arrange for a sale in Brazos County? Logically, it would not have been necessary to bring appellant and Poff "into the loop" had not they manufactured the bombs in Brazos County. Further, why would the parties discuss arrangements for an ongoing transaction for bombs in Brazos County if the bombs were being made elsewhere? A fact question existed concerning the actual site of manufacture. That question was for the jury to resolve. A rational jury could have found beyond a reasonable doubt that the bombs were manufactured in Brazos County. Point one is overruled.

 Next appellant contends that the evidence is insufficient to prove that the bombs were manufactured within the statute of limitations period. The State is not required to prove the exact date of the offense. The proof must show that the offense was committed at such a time so that the prosecution was not barred by the statute of limitations. *Cooper v. State,* 527 S.W.2d 563, 565 (Tex.Crim.App.1975). The statute of limitations for appellant's offense is three years. *See* TEX.CODE CRIM. PROC.ANN. art. 12.01(5) (Vernon Supp.1993).

 Appellant was first indicted on January 10, 1991. The indictment alleged that the offense occurred on or about August 16, 1990. Therefore, the State had to prove that the manufacture occurred sometime after January 10, 1988, and before the presentment of the indictment.

Aguilera found the pipe bombs in appellant's apartment on August 16, 1990. Thus, the evidence shows that the offense occurred before the presentment of the indictment. We thus turn to whether the evidence showed that the offense occurred sometime after January 10, 1988. There was no direct evidence introduced to show when the bombs were made. To argue that the evidence is sufficient, the State relies on the testimony of Ernest Ruiz, the informant, who saw the bombs in August 1990, and evidence that Charles Poff, appellant's conspirator, was prosecuted previ-

ously for making another explosive device, a device for which appellant had supplied the igniter, but claimed, in 1989, that he had done so without knowledge of Poff's intended use for the device. ·We review some of the evidence which we ultimately hold shows that the device was manufactured within the statute of limitations period.

Karen Cunningham, appellant's mother, testified that appellant was born on November 11, 1970. He graduated from high school in 1989, and moved into his own place six or seven months later. Appellant met Poff when he was a junior in high school.

Appellant testified that he moved out of his parent's house in December 1989 or January 1990. He moved to Lincoln Street. Sometime later, a time the record does not reveal but which must have been sometime during 1990, appellant moved to his apartment on Pleasant Street where Aguilera found the bombs in August 1990.

Appellant said he met Poff during "the latter part" of high school. Appellant admitted that he knew that in October 1989, Poff was arrested for manufacturing another bomb. Appellant admitted that he supplied a timer for that device, but he claimed then and still claims that he had not known that Poff was going to use the timer for a bomb. He stated that he was known as a "goodie two-shoes" and that hanging around Twilley and Poff put some excitement in his life.

Appellant, although denying any participation in manufacturing the pipe bombs, testified that he first saw the bombs when he lived on Pleasant Street. Poff showed him the bombs one day when he came home from work. Appellant admitted that he knew the bombs were at his apartment and that he and Poff had talked about the feasibility of adding electronic devices to the bombs.

We believe a rational juror could find beyond a reasonable doubt that the bombs were manufactured within the statute of limitations period. We note that appellant graduated from high school in 1989. He met Poff in the "latter part" of his high school years, by his testimony, or while he was a junior, by his mother's testimony. Thus, the jury could have determined that appellant did not know Poff until sometime in 1988 or 1989.

The gist of appellant's testimony is that he was a "goodie two-shoes" and unaware that Poff was building bombs in October 1989. By believing this testimony, the jury could have concluded that appellant first became involved in knowingly possessing or making bombs sometime after October 1989. Appellant's testimony that he first saw the bombs when he lived on Pleasant Street means that he first saw the bombs sometime in 1990. By believing Ruiz's testimony that appellant admitted to making the bombs, the jury could reasonably have concluded that appellant made the bombs, or assisted in making the bombs, sometime during 1990. Accordingly, the evidence is sufficient to show that the bombs were made during the statute-of-limitations periods. Appellant's second point of error is overruled.

In his third point of error, appellant contends that "the trial court erred in refusing to instruct the jury to disregard the prosecutor's remark that the jury charge was not controlling." As noted above, the trial court instructed the jury that it had to find beyond a reasonable doubt that the offense occurred in Brazos County. Contrary to the charge, the prosecutor argued in closing that the State only had "to prove Brazos County by preponderance of the evidence." Appellant objected that the charge required otherwise. The trial court sustained the objection. The prosecutor then stated, "The Court of Criminal Appeals says that—it says if you don't have any evidence that this was made anywhere but Brazos County—." Appellant's counsel objected, and a bench conference followed. The trial court instructed the prosecutor to follow the law as set forth in the charge and not to declare what the Court of Criminal Appeals has held to be the correct standard of proof on venue. Appellant requested no further relief at that time and the prosecutor continued her argument. At the conclusion of the prosecu-

tor's argument, another bench conference was held. The trial court indicated that appellant had requested the court to instruct the jury to disregard the prosecutor's prior statement about venue based on preponderance of the evidence. After some discussion, the trial court refused to so instruct.

The State asserts that the argument was not reversible because it was not contrary to the law. *See* TEX.CODE CRIM. PROC.ANN. art. 13.17 (Vernon 1977). The State, without amplification, further asserts that *Arceneaux*, and the line of cases requiring the State to meet the burdens imposed upon it in the jury charge, is not applicable on this point. We disagree with the State on both assertions. The "law" applicable to a specific case is that law which is contained within the jury charge. The prosecutor's argument was thus contrary to the law applicable to the case. Secondly, the Court of Criminal Appeals has recently reiterated that the State must prove what the charge requires the jury to find to convict. *See Fee v. State*, 841 S.W.2d 392 (Tex.Crim.App.1992).[2] The trial court was correct in sustaining appellant's objection. We find, however, that appellant, by not requesting an instruction to disregard at the time of the prosecutor's misstatement, waived his right to appellate review of the matter. Generally, a defendant must object at the time objectionable argument is made. *See Curtis v. State*, 640 S.W.2d 615, 618 (Tex.Crim.App.1982). An objection made after the argument is not timely. *Hougham v. State*, 659 S.W.2d 410, 414 (Tex.Crim.App.1983); *Collins v. State*, 548 S.W.2d 368, 377 (Tex.Crim.App. 1977). Here, although appellant timely objected, he waited until argument was concluded to request an instruction to disregard. That request was not timely. Appellant's third point is overruled.

In point four, appellant contends that the trial court erred in overruling his motion to suppress. Appellant contends that Aguilera's entry into his apartment was illegal because he had no warrant. We disagree. The evidence shows that Oni Twilley got the key to appellant's apartment from Poff. Twilley and Aguilera went into the apartment. Twilley went directly to the kitchen and retrieved the pipe bombs as Aguilera came into the apartment. From his conversation with Twilley, Aguilera believed appellant and Twilley were related. Although Aguilera admitted that he never discussed entering the apartment with appellant, the circumstances show that Aguilera entered the apartment with the permission of the persons working in harmony with appellant. Furthermore, appellant testified at the suppression hearing that Poff had a key to his apartment and kept some of his clothing and property there. Thus, it appears that Poff alone had some authority to permit Aguilera to enter appellant's apartment.

We find that the evidence shows that Aguilera was invited into appellant's apartment by one of his co-conspirators. A government agent, in the same manner as a private person, may enter a premise when he is invited. *See Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966). Aguilera's entry did not violate the United States Constitution. Appellant has advanced no theory for interpreting the Texas Constitution differently from the federal, and therefore we will not address his point regarding a violation of the Texas Constitution. *See Heitman v. State*, 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991). Appellant's fourth point is overruled.

In his fifth point appellant contends that the trial court erred in admitting evidence about Poff's 1989 incident and appellant's role therein, such that this constituted an extraneous offense. We disagree. Appellant denied committing any

---

**2.** The Court stated, "[T]here is no such thing as surplusage in the authorization paragraph of the jury charge, and since *Benson* [*v. State*, 661 S.W.2d 708 (Tex.Crim.App.1982), cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)], and *Ortega* [*v. State*, 668 S.W.2d 701 (1984)], and *Ortega* [*v. State*, 668 S.W.2d 701 (Tex.Crim.App.1983) ], we have steadfastly held that so long as the State does not object to a jury charge that thus enhances its burden, sufficiency of the evidence will be measured against that charge."

offense with Poff in 1989, and the State never insinuated that appellant ever had any knowledge of that illegality. In fact, that appellant was not prosecuted and was not involved in the criminal act is uncontroverted. Accordingly, we find no error in the trial court's admission of the evidence. The evidence about Poff's 1989 incident simply was not evidence of an extraneous offense implicating appellant. As the Court stated in *McKay v. State*, 707 S.W.2d 23, 31–32 (Tex.Crim.App.1985)[3]:

> Evidence of an extraneous offense must necessarily involve evidence of prior criminal *conduct* by the accused. (citation omitted). If the evidence fails to show that an offense was committed or that the accused was connected to the offense, then evidence of an extraneous offense is not established. (original emphasis).

*See Taylor v. State*, 684 S.W.2d 682, 684–86 (Tex.Crim.App.1984). Compare this case to *Saenz v. State*, 843 S.W.2d 24 (Tex. Crim.App.1992), wherein the State insinuated that the defendant was involved in the prior criminal act. Appellant's fifth point is overruled.

■ In point six, appellant contends that the trial court erred in refusing to apply the law of parties to the facts of the case in the paragraph of the charge which permitted conviction on an accomplice theory. Appellant contends that the charge should have stated the manner and means or specific acts by which appellant was guilty as an accomplice. While the authorization paragraph is set out under point of error one, the pertinent part of paragraph required the jury to find that appellant "did direct, aid or attempt to aid Charles Poff." Appellant wanted this portion to more specifically refer to appellant's conduct, such as by stating "did direct, aid or attempt to aid Charles Poff by supplying the electronics." In *Johnson v. State*, 739 S.W.2d 299, 305 n. 4 (Tex.Crim.App.1987), the Court held that an abstract definition of parties was insufficient to instruct the jury on the specific modes by which a defendant could be guilty as a party. The Court stated that

the charge should specify whether the defendant "solicited, encouraged, directed, aided or attempted to aid" or some combination thereof. The charge in the present case meets the requirements of *Johnson.* We find no reason to require the charge to contain the evidentiary basis for the specific conduct which supports the submission of the issue. Appellant's sixth point is overruled.

In point seven, appellant contends that the trial court erred by not giving a limiting instruction when admitting the extraneous offense concerning Poff. Having found that the evidence did not constitute an extraneous offense, no limiting instruction was required. *Taylor*, 684 S.W.2d at 686. Appellant's seventh point of error is overruled.

The judgment of the trial court is AFFIRMED.

---

**3.** U.S. cert. denied 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).