IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-051-CR





GILBERT CHAPOY,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF RUNNELS COUNTY, 119TH JUDICIAL DISTRICT


NO. 3965, HONORABLE JOHN E. SUTTON, JUDGE PRESIDING



 





 Appellant Gilbert Chapoy appeals his conviction for murder. Tex. Penal Code
Ann. § 19.02(a)(1) (West 1989). The jury found appellant guilty and assessed his punishment at
sixty years' imprisonment.

 Appellant advances nine points of error. Two of the points challenge the
sufficiency of the evidence to sustain the conviction. Appellant also complains of the admission
of an autopsy report and of evidence of extraneous matters not connected with him. In addition,
appellant urges that the trial court erred in failing to submit a specific issue to the jury at the
penalty stage of the trial as to a deadly weapon finding, in failing to submit charges on the lesser
included offenses of simple and aggravated assault, and in failing to submit "a defensive theory"
to the jury in the court's charge. Appellant further complains that the trial court failed to
disqualify the prosecutor. In the last point of error, appellant claims a violation of Batson v.
Kentucky, 476 U.S. 79 (1986), and includes a complaint that "the jury make-up was not racially
representative" in violation of the Sixth Amendment to the United States Constitution. We will
affirm the conviction.

 The indictment alleged in pertinent part that on or about July 22, 1991, appellant:



did then and there intentionally and knowingly cause the death of an individual, to
wit: Gilbert Cortez, by strangling the said Gilbert Cortez with a deadly weapon,
to wit: a necktie, which in the manner of its use and intended use was capable of
causing death and serious bodily injury.



 The deceased, Gilbert Cortez, worked at a grocery store in Coleman County. On
July 22, 1991, Cortez left the store in the company of an older Hispanic woman in her "mid-fifties." The woman introduced herself as Cortez's mother to fellow employees. Cortez later
introduced her as his aunt. Edmund Ludlow, assistant store manager, placed Cortez's departure
at 1:00 or 1:30 p.m., on July 22, 1991. Denver Louis Fulbright, another store employee, stated
that Cortez and the woman left the store about 6:00 p.m. Cortez was not seen again by the store's
employees. On September 6, 1991, Cortez's body was found in an abandoned refrigerator on a
farm in Runnels County with a necktie pulled tight around his neck.

 Jesse Cortez, father of the deceased, testified that he never saw his son alive after
July 22, 1991. He revealed that his son had a tattoo "Berta" on his left arm. Jesse acknowledged
that for two years or so, he lived "off and on" with Dominga Fernandez, mother of the appellant. (1) 
He terminated that relationship in May or June of 1991. Jesse Cortez revealed that he had
married Mona Green on July 20, 1991.

 Linda Fernandez, sister of appellant, testified that Jesse Cortez was her "step-dad
at one time"; (2) that he and her mother, Dominga, lived together for about four years; and that they
separated in the middle of July 1991. Linda stated that on July 22, 1991, she visited Jesse Cortez
at his place of employment in Coleman. He told her at that time he had gotten married a few days
earlier. She testified that she told her mother about Jesse's marriage the next day, July 23, 1991. 
She claimed that her earlier written statement reflecting that she told her mother about the
marriage on July 22, 1991, was incorrect.

 Patrick Lange related that he was driving on Highway 67 into Ballinger in Runnels
County on the night of July 22, 1991, about 9:00 p.m. As Lange crossed the Elm Creek bridge,
he saw one man kneeling over another man. The kneeling man seemed to say "Help" or "Stop." 
Lange immediately reported the matter to the Ballinger Police Department.

 Dolores Guebarra lived at 202 Second Street in Ballinger just off Highway 67. She
knew Dominga Fernandez and was familiar with the gray four-door car that Dominga drove in
July 1991. Guebarra testified that on the night of July 22, 1991, she and her husband were sitting
in their yard when they heard gunshots, possibly .22 caliber gunshots. Later, she observed a car
drive up to the Elm Creek bridge and saw a man come limping out from under the bridge. The
injured man scuffled with a man who had gotten out of the car. The injured man was then placed
in the car, which was like the one owned by Dominga Fernandez, and the car was driven off.

 Ballinger Police Officer Stephen Gray responded to a report of an altercation at the
Elm Creek bridge about 9:22 p.m. on July 22, 1991. Gray found a "volley-ball sized" spot of
blood on a curb near the bridge and followed blood droplets back to the bridge and down First
Street. Officer Gray found some .22 caliber shells and the box in which they had apparently been. 
Gray obtained a specimen of the blood found, but it was later discarded without any determination
of whether the blood was of human origin.

 Harry Cowan testified that he owned a farm in Runnels County outside of Ballinger
and described its location. On the property at the time that he purchased it was an abandoned
freezer. In July 1991, Cowan noticed that a come-along and cable or chain had been wrapped
around the freezer. He was on jury duty at the time and did not investigate. About September
6, 1991, he removed the come-along, opened the freezer and discovered a body. Deputy Sheriff
Quentin Watkins went to the Cowan farm on September 6, 1991. He observed the body in the
freezer with a necktie pulled tight around the neck.

 Dr. Vincent Di Maio, Bexar County Chief Medical Examiner, performed an
autopsy on the body. The left arm bore a tattoo, "Berta." The cause of death was ligature
strangulation. In the doctor's opinion, the necktie was the ligature that caused the death. There
was blood on the front of the clothing, indicating an injury. An examination of the body and x-rays failed to reveal any gunshot wounds. Glenn Unnasch, a fingerprint examiner with the
Department of Public Safety, confirmed the identity of the body as found in the freezer or
refrigerator as that of Gilbert Cortez.

 Deputy Sheriff Keith Collum testified that on September 6, 1991, he executed a
search warrant and seized a chain from the trunk of the 1984 Oldsmobile automobile belonging
to Dominga Fernandez. Chemist Keith Roberson with the Texas Department of Public Safety
testified that the seized chain and the come-along found on the freezer both had reddish-brown
paint on them which tests showed could have come from the same source. Human blood found
in the front and back seats of the Oldsmobile was not typed.

 Kenneth Drake, general manager of the Ballinger Co-Op Gin Company, testified
at the October 1992 trial that appellant had worked at the company two or three years before the
trial; that Clemente Nava, a half-brother of appellant, still worked there; and that the company
used "a lot of come-alongs to pull pipe together, move equipment and a number of things." Drake
explained that come-alongs often broke in the hinge area "because we put too much pressure on
them." He stated that his company painted the come-alongs with yellow paint so that they could
be seen in the dark. When shown the come-along taken from the freezer, Drake observed that it
appeared to be broken "kind of like what we normally break them"; and that while the come-along
had been repainted, underneath the newer paint appeared the color his company used, at least, that
was his impression when the exhibit was examined in the daylight. He could not, however, be
positive the come-along was from his company.

 Marcus Guerrero testified that in the summer of 1991, appellant asked him how to
get rid of a body. Appellant told Guerrero that appellant had killed a "wetback," and that "they
had put it in a refrigerator." Later, while seeking a hay hauling job, Guerrero and appellant drove
past a farm in Runnels County described as being in the general location of the Cowan farm. At
the farm there was a police car, cameras and cameramen. Guerrero's wife, who also was riding
in the truck, asked what was happening. Appellant replied that he had killed a deer there. 
Guerrero's wife responded that there was no point in having "a cop and cameras for a deer." 
After discovering the hay hauling job had already been completed, the group retraced the same
route. The "cop car" and cameras were still at the small farm. Guerrero's wife repeated her
earlier remarks, to which appellant responded that he had killed "a special deer" there.

 Sammy Joe Lopez was acquainted with appellant. While in the county jail with
appellant in September 1991, Lopez asked appellant why appellant "had done it." Appellant said
it was because the deceased "was messing with his mom." Appellant told Lopez that appellant's
mother was "there" at the time. Lopez had been to prison three times and acknowledged that he
had a number of convictions and arrests.

 Clyde Fay, a Texas prison inmate, testified that he was returned from Illinois and
placed in the same cell with appellant in November 1991. Fay did not know appellant and had
not heard of the alleged offense. Appellant told Fay that he had killed a man and placed him in
an icebox with a come-along. Appellant gave a reason for the killing, but Fay could not recall
whether it was for money "or his mom." Fay claimed appellant indicated that his mother was
involved. Later, appellant accused Fay of being a snitch and threatened "that he would do me like
he done him."

 Nick Mata was the only defense witness. He testified that the deceased dated and
lived with Mata's married sister, Margie Galvan. Mata did not know of any problems between
Margie's husband, Aldo Galvan, and the deceased. Mata did know that Aldo lived in Runnels
County in July 1991. 

 Initially, appellant contends that the State failed to prove the murder occurred in
Runnels County as alleged. Venue means the place where the case may be tried. Ex parte
Watson, 601 S.W.2d 350, 351 (Tex. Crim. App. 1980). While it must be established, venue is
not a "criminative fact" and thus is not an essential element of the offense. Fairfield v. State, 610
S.W.2d 771, 779 (Tex. Crim. App. 1981); Edwards v. State, 427 S.W.2d 629, 636 (Tex. Crim.
App. 1968). It is only necessary to prove venue by a preponderance of evidence. Tex. Code
Crim. Proc. Ann. art. 13.17 (West 1977); Cunningham v. State, 848 S.W.2d 898, 902 n.1 (Tex.
App.--Corpus Christi 1993, pet. ref'd). Venue may be established by direct or circumstantial
evidence. Edwards, 427 S.W.2d at 636; Gill v. State, 646 S.W.2d 532, 533 (Tex. App.--Houston
[1st Dist.] 1982, no pet.). Article 13.07 of the Texas Code of Criminal Procedure provides: "If
a person receives an injury in one county and dies in another by reason of such injury, the
offender may be prosecuted in the county where the injury was received or where the death
occurred, or in the county where the dead body is found." Tex. Code Crim. Proc. Ann. art.
13.07 (West 1937) (emphasis supplied). The county in which the murder victim's body is found
is a proper venue for a murder trial. Boyle v. State, 820 S.W.2d 122, 140 (Tex. Crim. App.
1989), cert. denied, 112 S. Ct. 1297 (1992). In the instant case, appellant timely raised the issue
of venue by a motion for an instructed verdict. Cunningham, 848 S.W.2d at 902. However, the
undisputed evidence shows that the body of the deceased was found in Runnels County. Venue
was sufficiently established. Point of error one is overruled.

 In point of error two, appellant continues his attack upon the sufficiency of the
evidence. We need not reiterate the testimony. Appellant urges that the State failed to prove that
the deceased was strangled as alleged in the indictment. Dr. Di Maio testified that the cause of
death was strangulation by a ligature which in the instant case was a necktie with a knot. The
doctor explained that strangulation with a ligature occurs when the ligature is tightened around
the neck cutting or tying off the carotid arteries which carry blood and oxygen to the brain. The
person becomes unconscious within seconds and soon stops breathing. Dr. Di Maio pointed out
that strangulation by a ligature does not cut off the airway, but ties off the two blood vessels. 
Appellant misreads the doctor's testimony in urging his contention.

 A necktie is not a deadly weapon per se but can qualify as one through the manner
of its use or intended use. See Tex. Penal Code Ann. § 1.07(a)(11) (West 1974); cf. Morales v.
State, 792 S.W.2d 789, 790 (Tex. App.--Houston [14th Dist.] 1990, no pet.) (holding that hands
and the deceased's underpants were "deadly weapons" from the manner of their use). The
testimony from Dr. Di Maio was sufficient evidence from which a rational trier of fact could have
found that the necktie and its knot was used as a ligature and was a deadly weapon.

 While appellant was not shown to have participated in the disappearance of the
deceased or been placed in the company of the deceased on or about July 22, 1991, the record
contained admissions against interest. Appellant told Guerrero that he had killed a "wet-back"
and asked how to dispose of a body which had been placed in a refrigerator. Later, appellant told
Guerrero that he had killed a "special deer." Appellant told Fay that he had killed a man and
placed him in an ice box. To Lopez, appellant confessed that he had committed the offense with
which he was charged because the deceased "was messing with his mom." Cortez's body was
found in a freezer.

 The jury is the exclusive judge of the credibility of the witnesses and of the weight
to be given their testimony. Tex. Code Crim. Proc. Ann. art 38.04 (West 1979); Saxton v. State,
804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury is free to accept or reject any or all of
the evidence presented by either party. Id.; Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim.
App. 1987). Reconciliation of evidentiary conflicts is solely a function of the trier of fact. 
Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982).

 Appellate review of the legal sufficiency of the evidence is limited to determining
whether, in the light most favorable to the jury's verdict, a rational trier of fact could have found
beyond a reasonable doubt the essential elements of the crime charged. Jackson v. Virginia, 443
U.S. 307, 319 (1979); Villalon v. State, 791 S.W.2d 130, 132 (Tex. Crim. App. 1990). The
standard of review is the same in both direct and circumstantial evidence cases. Geesa v. State,
820 S.W.2d 154, 161 (Tex. Crim. App. 1991); Herndon v. State, 787 S.W.2d 408, 409 (Tex.
Crim. App. 1990). It is not the reviewing court's duty to disregard, realign or weigh the
evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). If there is evidence
that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, an
appellate court is not in a position to reverse the judgment on sufficiency of evidence grounds. 
Jackson, 443 U.S. at 319; Glass v. State, 761 S.W.2d 806, 807 (Tex. App.--Houston [1st Dist.]
1988, no pet.); see also Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). Viewing
the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of
fact could have found beyond a reasonable doubt all the essential elements of the offense charged. 
Point of error two is overruled.

 In point of error three, appellant complains of the admission into evidence, over
objection, of the autopsy report during the testimony of Dr. Vincent Di Maio. The Bexar County
Medical Examiner testified that he performed the autopsy on the body of the deceased, personally
prepared the autopsy report, and he was not a member of law enforcement. Dr. Di Maio related
that he worked under the direction of the Bexar County Commissioners' Court at the Forensic
Science Center, and not for any law enforcement agency. He explained that when another county
or jurisdiction requested an autopsy, it would be "a fee for service" at a set rate which would be
paid to Bexar County. (3)

 In Cole v. State, 839 S.W.2d 798, 807 (Tex. Crim. App. 1990), the Court of
Criminal Appeals held that the report of a nontestifying Department of Public Safety chemist was
a matter observed by law enforcement personnel and was therefore not admissible under Rules
803(8)(B) or 803(6) as exceptions to the hearsay rule either as a public record or as a business
record. Tex. R. Crim. Evid. 803(6), 803(8)(B); see also Davenport v. State, 856 S.W.2d 578
(Tex. Crim. App. 1993).

 An autopsy report by a medical examiner is a public record. Tex. Code Crim.
Proc. Ann. art. 49.01(1) (West Supp. 1994). Medical examiners are not generally considered
"other law enforcement personnel" for purposes of exclusion under the public record hearsay
exception, and thus autopsy reports are admissible under the hearsay exception for public records
in view of the fact that, even though autopsy reports are partially subjective, they are generally
prepared by officials with no motive to fabricate results of reports and that autopsy reports are not
prepared in an adversarial context. Garcia v. State, 868 S.W.2d 337, 341-42 (Tex. Crim. App.
1993). In light of Garcia and the particular circumstances of the instant case, including the fact
that the testifying witness performed the autopsy and executed the report in question, Cole and
its progeny are not controlling. We conclude that the autopsy report was admissible as an
exception to the hearsay rule as a public record and a business record as well. (4) Other complaints
about the admission of the autopsy report are asserted on appeal, but are not properly briefed as
required. See Tex. R. App. P. 74(f). Nothing is presented for review on these matters. Point
of error three is overruled.

 In the fourth point of error, appellant contends that the trial court abused its
discretion in not disqualifying assistant district attorney Kenneth Slimp from participating in the
case "after objection and request of appellant." Appellant filed a written motion to disqualify
prosecutor Slimp, alleging that Slimp, while in private practice, had represented him in a prior
felony case in which probation had been granted. In his brief, appellant refers us only to the
motion in the transcript. We do not find that the motion was ever presented to the trial court, that
a hearing was held, or that a ruling was secured. The motion did not prove itself. We have failed
to find any objection as claimed by appellant. See Tex. R. App. P. 52(a). The question of
prosecutorial disqualification was never presented to the trial court and nothing was preserved for
review. Worthington v. State, 714 S.W.2d 461, 465 (Tex. App.--Houston [1st Dist.] 1986, pet.
ref'd). The record does not contain any showing that the prosecutor received any confidential
information harmful to appellant's instant case by virtue of the prosecutor's earlier representation
of appellant, if that fact were true. Id.; see also Munguia v. State, 603 S.W.2d 876, 878-79 (Tex.
Crim. App. 1980). Point of error four is overruled.

 In his fifth point of error, appellant claims that the trial court erred in refusing to
submit, upon request, at the penalty stage of the trial a special issue as to whether a deadly
weapon was used as alleged. At the guilt stage of the trial, the jury returned the following
verdict:



 We, the jury, find the defendant guilty of the offense of murder a felony
of the first degree by intentionally or knowingly causing the death of Gilbert
Cortez by strangling the said Gilbert Cortez with a deadly weapon, to-wit: a
necktie, which in the manner of its use and intended use was capable of causing
death or serious bodily injury, as charged in the indictment.



The jury verdict constituted an affirmative finding of the use of a deadly weapon. Tex. Code
Crim. Proc. Ann. art. 42.12, § 3(a)(2) (West 19 ); Polk v. State, 693 S.W.2d 391, 394 (Tex.
Crim. App. 1985). There was no error in the trial court's refusal to submit a special issue on the
use of a deadly weapon at the penalty stage of trial. Point of error five is overruled.

 In the sixth point of error, appellant claims that the trial court "failed to exclude
inadmissible evidence offered by Lange and Guebarra over objection as same was not connected
to defendant or any issue in the case." There was no objection to Patrick Lange's testimony when
it was offered, despite appellant's assertion to the contrary. (5) In fact, a photograph, State's Exhibit
Two, was sponsored by Lange. When the exhibit was offered, appellant's counsel expressly
stated; "No objection." No error as to Lange's testimony has been preserved for review. Tex.
R. App. P. 52(a); Tex. R. Crim. Evid. 103(a)(1); Drew v. State, 743 S.W.2d 379, 389 (Tex.
Crim. App. 1987), cert. denied, 488 U.S. 986 (1988).

 The bulk of Mrs. Guebarra's testimony was presented before appellant objected on
the grounds now asserted on appeal. The objection was not timely. There was no motion to
strike and no request for the jury to be instructed to disregard. In the case of oral testimony, as
here, the objection must precede the witness's answer or answers in order to be timely. See
Guzman v. State, 521 S.W.2d 267, 269 (Tex. Crim. App. 1975). To preserve error in the
admission of evidence, Rule 103(a)(1) requires a timely and specific objection and a timely motion
to strike. Tex. R. Crim. Evid. 103(a)(1); 1 Steven Goode, Olin Guy Wellborn, III & M. Michael
Sharlot, Guide To The Texas Rules of Evidence: Civil and Criminal § 103.2 at 18 (Tex. Practice
2d Ed. 1993). 

 As to the balance of Mrs. Guebarra's testimony, after appellant's objection was
overruled, appellant has not shown how his substantial rights have been affected (6) or how the trial
court abused its discretion in admitting the testimony. See Tex. R. App. P. 74(f).

 The trial court has broad discretion in determining the admissibility of evidence and
its ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. See
Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993); Allridge v. State, 850 S.W.2d
471, 492 (Tex. Crim. App. 1991), cert. denied, 114 S. Ct. 101 (1993). Questions of relevancy
should be left largely to the sound discretion of the trial court, relying on its own observations and
experience. Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 19 ), cert. denied, 114
S. Ct. 445 (1993); McKee v. State, 855 S.W.2d 89, 91 (Tex. App.--Houston [14th Dist.] 1993,
no pet.). If it can be argued that the trial court abused its discretion in admitting the balance of
Mrs. Guebarra's testimony after the objection, we conclude that the error was harmless error
beyond a reasonable doubt. Tex. R. App. P. 81(b)(2); Harris v. State, 790 S.W.2d 568 (Tex.
Crim. App. 1989). Point of error six is overruled.

 In point of error seven, appellant complains that the trial court "erred in failing to
give requested issues on simple assault and aggravated assault based on evidence admitted from
Lange and Guebarra over objection." In order to determine whether a charge on a lesser included
offense is required, we must apply a two-pronged test. Dowden v. State, 758 S.W.2d 264, 268
(Tex. Crim. App. 1988); Aguilar v. State, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985); Royster
v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981); see also Tex. Code Crim. Proc. Ann.
art. 37.09 (West 1981). First, the lesser included offense must be included within the proof
necessary to establish the offense charged. Second, there must be some evidence in the record
that if the defendant is guilty, he is guilty only of the lesser included offense. Ross v. State, 861
S.W.2d 870, 876 (Tex. Crim. App. 1992); Jones v. State, 833 S.W.2d 118, 127 (Tex. Crim.
App. 1992); Royster, 622 S.W.2d at 446. As to this second requirement of the so-called Royster
test, there must exist in the record evidence that would permit a jury to rationally find the
defendant guilty of the lesser offense. See Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex.
Crim. App. 1993).

 To determine the necessity of a lesser included offense instruction, consideration
of all the evidence at trial is required. Havard v. State, 800 S.W.2d 195, 216 (Tex. Crim. App.
1989) (op. on rehearing); Lugo v. State, 667 S.W.2d 144, 147 (Tex. Crim. App. 1984). The
issue of a lesser included offense can be raised from any evidentiary source, even if weak or
contradicted. Gold v. State, 736 S.W.2d 685, 688 (Tex. Crim. App. 1987); see also Saunders
v. State, 840 S.W.2d 390, 392 (Tex. Crim. App. 1992). It has been held, however, that isolated
facts cannot be taken out of context in the record in order to justify a submission of a lesser
included offense instruction. Ramos v. State, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993);
Godsey v. State, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986). The necessity of the charge must
be determined upon a case-by-case basis after considering all of the evidence. Dowden, 758
S.W.2d at 269.

 We need not determine if the first prong of the Royster test has been met. (7) This
is so because there is no evidence in the record permitting a rational jury to conclude that if
appellant is guilty, he is guilty only of the lesser offenses of aggravated assault or simple assault. 
Appellant relies upon the testimony of Lange and Guebarra to justify the submission of the lesser
offenses. Their testimony did not connect appellant to the actions they described. Adding the
balance of the evidence, the second prong of the Royster test was not met. The trial court did not
err in failing to respond to appellant's requested charges. Point of error seven is overruled.

 Appellant's eighth point of error contends that the trial court "erred in failing to
give requested issue submitting a defensive issue that was raised by evidence that Defendant may
have plotted to dispose of body and thus had a part in such illegal act thus committing separate
offenses which would permit alternative to aggravated murder." Appellant's motion for new trial
was overruled by operation of law. Tex. R. App. P. 31(e). Appellant directs our attention to one
page in his new trial motion where he complains of the trial court's failure "to submit an alternate
theory of defense of obstruction of justice." The entire argument presented in appellant's brief
reads:



 This failure to submit requested defensive theory of Defendant's
involvement in Runnels County with Cortez's body and the deep freeze was
particularly aggravated by the Court's denial of separate issues on affirmative
weapon finding, and lesser included offenses, and when taken together, Defendant
was denied Constitutional guarantees of the 5th, 8th, and 14th amendments.



 A page by page examination of the record reveals a request for an instruction on
"obstruction of justice," but we have been unable to determine from the record or the appellate
brief just what instruction appellant felt he was entitled to under the evidence presented. The
authorities cited are not in point. The briefing requirements have not been met. See Tex. R.
App. P. 74(d), (f). Nothing is presented for review. Point of error eight is overruled.

 Lastly, appellant complains that the jury make-up was not racially representative
and was not a fair cross-section of the community thus violating his rights under the federal
constitution. Appellant cites Batson v. Kentucky, 476 U.S. 79 (1986); Taylor v. Louisiana, 419
U.S. 522 (1975); and Holland v. Illinois, 493 U.S. 474 (1990). Appellant refers to this ninth
point of error as a "two-prong objection." Appellant's point of error is multifarious and normally
presents nothing for review. Adkins v. State, 764 S.W.2d 782, 785 (Tex. Crim. App. 1988);
Cuevas v. State, 742 S.W.2d 331, 335 n.4 (Tex. Crim. App. 1987), cert. denied, 485 U.S. 1015
(1988); Miranda v. State, 813 S.W.2d 724, 740 (Tex. App.--San Antonio 1991, pet. ref'd). By
combining more than one legal theory in a single point of error, an appellant risks rejection on
the ground that nothing is presented for review. Sterling v. State, 800 S.W.2d 513, 521 (Tex.
Crim. App. 1990), cert. denied, 111 S. Ct. 2816 (1991). Where, however, separate references
to the record regarding each contention are made, a multifarious point of error may be required
to be reviewed. Armstrong v. State, 845 S.W.2d 909, 910 (Tex. Crim. App. 1993); see also Imo
v. State, 822 S.W.2d 635 (Tex. Crim. App. 1991); Davis v. State, 817 S.W.2d 345 (Tex. Crim.
App. 1991). In any event, we shall attempt to untangle appellant's point of error. Sterling, 800
S.W.2d at 521.

 The Sixth Amendment to the United States Constitution entitles every defendant
to object to a venire that is not designed to represent a fair cross-section of the community. 
Holland, 493 U.S. at 477. To establish a prima facie violation of the Sixth Amendment's fair
cross-section requirement, a defendant must demonstrate that: (1) the group alleged to be
excluded is a "distinctive" group in the community; (2) the representation of this group in the
venire from which juries are selected is not fair and reasonable in relation to the number of such
persons in the community; and (3) the underrepresentation is due to the systematic exclusion of
the group in the jury selection process. Duren v. Missouri, 439 U.S. 357, 364 (1979).

 While appellant's counsel attempted to show the number of Hispanics in the county,
he offered no evidence that the underrepresentation of Blacks or Hispanics was due to the
systematic exclusion of those groups in the jury selection process. Accordingly, the trial court
did not err in failing to discharge the venire. See May v. State, 738 S.W.2d 261, 268-69 (Tex.
Crim. App.), cert. denied, 484 U.S. 872 (1987); Rodriguez v. State, 832 S.W.2d 727, 728 (Tex.
App.--Houston [1st Dist.] 1992, no pet.). Moreover, a defendant does not have a Sixth
Amendment right to a petit jury representing a fair cross-section of the community. Seubert v.
State, 787 S.W.2d 68, 70 (Tex. Crim. App. 1990); Weaver v. State, 823 S.W.2d 371, 372-73
(Tex. App.--Dallas 1992, pet. ref'd).

 As to appellant's claim of a Batson violation of purposeful discrimination by the
State's use of peremptory challenges, appellant does not tell us which prospective jurors were
improperly challenged nor does he contest the reasons given for striking the venirepersons. The
State contends that it struck only one Black, Owens, and only one Hispanic, Armendariz. Owens
was challenged because he was the uncle of a man previously convicted and sent to prison, and
who was now under indictment in an adjoining county for two new offenses. Owens himself was
suspected of being involved with his nephew in drug offenses. The arrest or conviction of a
venireperson's relative is a race-neutral explanation for striking that venireperson. See Munson
v. State, 774 S.W.2d 778, 779-80 (Tex. App.--El Paso 1989, no pet.); Perry v. State, 770 S.W.2d
950, 952 (Tex. App.--Fort Worth 1989, no pet.); Wilson v. State, 769 S.W.2d 682, 683 (Tex.
App.--Beaumont 1989, no pet.).

 Armendariz was peremptorily challenged because the prosecutor, Ken Slimp, had
represented Armendariz's ex-husband in a custody suit over the Armendariz children. We
conclude that this was a race-neutral reason for the exercise of the challenge. The standard of
review for claims that the State used peremptory strikes in a racially discriminatory manner is the
"clearly-erroneous" standard. Hill v. State, 827 S.W.2d 860, 865 (Tex. Crim. App. 1992);
Whitsey v. State, 796 S.W.2d 707, 728 (Tex. Crim. App. 1989) (op. on rehearing). This standard
accords great deference to the trial court's findings. The evidence is viewed in the light most
favorable to the trial court's ruling. Whitsey, 796 S.W.2d at 721. There was no violation of the
"clearly erroneous" standand. Point of error nine is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Kidd, B. A. Smith and Onion*

Affirmed

Filed: June 22, 1994

Do Not Publish



























* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1. [1]  Neither Ludlow nor Fulbright was able to identify Dominga Fernandez as the Hispanic
woman with whom Gilbert Cortez left the store.
2. [2]  Linda Fernandez also referred to the deceased as her "stepbrother at one time."
3. [3]  Dr. Di Maio explained that he performed private autopsies at the set rate if the family of the
deceased requested it. He had testified for the defense in some cases, and stated that he was not
under the supervision of any district attorney or law enforcement official.
4. [4]  We are aware that a petition for discretionary review has been granted in Aguilar v. State,
850 S.W.2d 640 (Tex. App.--San Antonio 1992, pet. granted). In light of Cole, Aguilar held that
the report of a nontestifying chemist from the Bexar County Medical Examiner's office was
inadmissible. We do not conclude that Aguilar calls for a different result here.
5. [5]  Assertions in appellate briefs not supported by the record will not be accepted as fact. 
Vanderbilt v. State, 629 S.W.2d 709, 717 (Tex. Crim. App. 1981); Miranda v. State, 813 S.W.2d
724, 738 (Tex. App.--San Antonio 1991, pet. ref'd).
6. [6]  See Tex. R. Crim. Evid. 103(a)(1).
7. [7]  Aggravated assault may be, but is not necessarily, a lesser included offense of murder. 
Dewberry v. State, 743 S.W.2d 260, 266 (Tex. App.--Dallas 1987), reversed on other grounds,
776 S.W.2d 589 (Tex. Crim. App. 1989); see also Dowden, 758 S.W.2d at 269.