**Eulan Darryl VANSCHOYCK,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–05–00068–CR.**

Court of Appeals of Texas, Texarkana.

Submitted March 8, 2006.

Decided March 14, 2006.

Rehearing Overruled April 4, 2006.

**334**

Craig L. Henry, Texarkana, for appellant.

Tina Richardson, Asst. Dist. Atty., Randal Lee, Dist. Atty., Linden, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Eulan Darryl Vanschoyck was convicted by a Cass County jury for the offense of sexual assault of a child. The jury assessed and the trial court imposed a sentence of ten years' confinement. Vanschoyck appeals bringing forward two issues: (1) the legal and factual sufficiency of the evidence to establish venue in Cass County, Texas, and (2) the failure of the trial court to give the jury an instruction regarding the parole law. We affirm the judgment of the trial court.

**Factual Background**

Vanschoyck does not attack the sufficiency of the evidence concerning the sexual assault, but argues only that venue was not shown to be proper in Cass County, Texas. Therefore, we will not delve into all of the facts of the assault. B.J., a child who was sixteen years old at the time, lived temporarily with her father,[1] Phillip Ray Lasster, Jr. Also living at that house was Kristi Kirk and a man she considered her uncle, Vanschoyck. On or about November 28, 2003, all members of this household had been drinking alcoholic beverages. Vanschoyck drove his vehicle, and B.J. and Kristi rode with him, on a country road in the southern part of Cass County. Sometime that evening, B.J. and Vanschoyck engaged in oral sex with each other. On being asked where they went that night, B.J. responded, "Riding around

---

1. The testimony in this case showed that Lasster was not actually her biological father.

the Lodi road, a blacktop." John Garrett, the Cass County investigator, to whom B.J. and Kristi gave statements, testified he understood it occurred somewhere in the Lodi area, which is in the southern part of Cass County. At the conclusion of the State's case, Vanschoyck moved for an instructed verdict on the venue issue, which was denied by the trial court.

*Venue*

■ Generally, the issue of venue need only be proven by a preponderance of the evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 13.17 (Vernon 2005); *Hignite v. State*, 522 S.W.2d 210 (Tex.Crim.App.1975). However, Vanschoyck argues that the general rule does not apply in this case because the jury was instructed it must find "beyond a reasonable doubt ... about the 28th day of November, 2003, in the County of Cass, and State of Texas" that Vanschoyck committed the offense. Therefore, since the jury was so instructed, it was required to make this finding of venue beyond a reasonable doubt. For this proposition, Vanschoyck cites *Cunningham v. State*, 848 S.W.2d 898, 902 (Tex. App.-Corpus Christi 1993 pet. ref'd), which in turn relied on *Arceneaux v. State*, 803 S.W.2d 267, 270–71 (Tex.Crim.App.1990). While the evidence in this case is sufficient to establish the venue facts beyond a reasonable doubt, we do not believe that is the correct standard.

The law in the State of Texas at one time required that sufficiency of the evidence must be measured by the jury charge actually given. In *Arceneaux*, the jury was charged that the State must prove beyond a reasonable doubt that an exhibit contained cocaine, when in fact the exhibit was an empty envelope from which the cocaine had been removed and consumed in the testing process. The Texas Court of Criminal Appeals held that, once the jury had been so instructed, the State

must produce such proof, and the failure to do so resulted in the evidence being legally insufficient. This view of the law has been dramatically altered.

In *Malik v. State*, the Texas Court of Criminal Appeals reviewed this line of cases requiring the sufficiency of the evidence to be measured by the jury charge, and specifically overruled those cases. 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997) ("No longer shall sufficiency of the evidence be measured by the jury charge actually given."). Instead, the Texas Court of Criminal Appeals announced that the test was based on the elements of the offense as defined by the hypothetically correct jury charge. *Id.* at 240.

■ *Cunningham*, the case on which Vanschoyck relies, was based on *Arceneaux* and the cases that have now been specifically overruled. *See Cunningham*, 848 S.W.2d at 902 n. 1. In *Cunningham*, the jury was instructed that it must find the defendant committed the crime beyond a reasonable doubt in Brazos County, Texas, and, therefore, that standard was used to test the sufficiency of the evidence. The Corpus Christi court was following the law as established by the Texas Court of Criminal Appeals at that time. Clearly, *Cunningham* no longer is in accord with the precedents of the Texas Court of Criminal Appeals. The correct test for judging sufficiency of the evidence is based under the hypothetically correct jury charge. Here, that means we should judge the sufficiency of the evidence based on a preponderance of the evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 13.17.

B.J. testified the sexual assault occurred "around the Lodi road, a blacktop." Garrett testified that "no on[e] knew exactly the location. It was somewhere in the Lodi area, which is in the south part of the county." He was then further asked, "And

that's in Cass County, correct?" [2] to which he answered, "Yes." There was no evidence to the contrary.

■■■ Traditionally, the test for determining legal sufficiency requires the appellate court to review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime "beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State,* 17 S.W.3d 664 (Tex.Crim. App.2000). That test presupposes that all essential elements of a crime are required to be proved beyond a reasonable doubt. By statute, the venue element only requires proof by a preponderance of the evidence. Therefore, as to the issue of venue, we judge the legal sufficiency of the evidence using the usual test, except the element of venue only requires proof that meets the preponderance of the evidence test. Similarly, a factual review of the evidence traditionally determines, after reviewing the evidence in a neutral light, whether the evidence supporting the finding, considered alone, is too weak to support the jury's finding beyond a reasonable doubt or if contravening evidence is so strong that the State could not have met its burden of proof. *Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004). Here, the burden on the State is only to prove the venue facts by a preponderance of the evidence, rather than the beyond a reasonable doubt standard.

Judging this evidence for both legal and factual sufficiency, we find the evidence to be legally and factually sufficient. We further find that the evidence is sufficient even if the test for proof of venue facts was based on the beyond a reasonable doubt standard.

## 2. Parole Law Instruction

■■■ Vanschoyck further urges that the trial court erred by failing to include in the jury charge a parole law instruction as required by Article 37.07, Section 4 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4 (Vernon Supp.2005). Vanschoyck did not object to the omission of the parole law instruction. Article 37.07, Section 4 requires that the instruction be given to the jury and it is error to fail to do so. *Myres v. State,* 866 S.W.2d 673 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). Since no objection was made, Vanschoyck must show that egregious harm resulted from the omission, or otherwise the error is not reversible. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g). Egregious harm results from errors that deny a defendant a "fair and impartial trial," "go to the very basis of the case," "deprive [the defendant] of a 'valuable right,'" or "vitally affect his defensive theory." *Id.* at 172. To determine whether there was egregious harm, we consider (1) the entire jury charge, (2) the evidence on contested issues and the weight of probative evidence, (3) counsel's argument, and (4) any other relevant information in the record. *Bailey v. State,* 867 S.W.2d 42, 43 (Tex.Crim.App.1993); *Taylor v. State,* 146 S.W.3d 801, 810 (Tex.App.-Texarkana 2004, pet. ref'd).

Vanschoyck argues that the parole law instruction would have benefitted him in this case. The argument is that Vanschoyck was fifty-five years of age at the time of trial, had never been convicted of any felonies or misdemeanors, and was

---

**2.** We will take judicial notice of the fact that Cass County is located within the State of Texas. TEX.R. EVID. 201(b); *see Houston v.* *State,* 426 S.W.2d 868, 869 (Tex.Crim.App. 1968); *Garcia v. State,* 819 S.W.2d 634, 636 (Tex.App.-Corpus Christi 1991, no pet.).

eligible for community supervision. He argues that, if the jury had been instructed that he would serve one half of the sentence without good time credit, there is a substantial likelihood the sentence would have been more lenient.

One of the first cases to analyze a situation similar to this was *Grigsby v. State*, 833 S.W.2d 573 (Tex.App.-Dallas 1992, pet. ref'd). In *Grigsby*, the trial court omitted entirely the parole law instruction and the defendant objected. Therefore, the standard for reversal was whether the error was calculated to injure the appellant's rights. *Almanza*, 686 S.W.2d at 171. Any actual harm, regardless of degree, would require reversal. *Grigsby*, 833 S.W.2d at 576. In *Grigsby*, the Dallas court held that the parole law instruction benefitted the State, not the appellant. *Id.* The instruction was designed to increase jury sentences. *Id.* On the facts of that case, the court found the defendant had suffered no harm.

This Court has addressed a similar fact situation in *Underwood v. State*, 927 S.W.2d 661 (Tex.App.-Texarkana 1996, no pet.). In *Underwood*, the defendant was assessed a seventy-year sentence for aggravated sexual assault. The trial court omitted the statutory parole law instruction, but gave an instruction that the jury was not to discuss how long the defendant was required to serve; such matter was the province of the Board of Paroles and the Governor and of no concern to the jury. *Id.* at 662. This Court recognized *Grigsby's* observation that it is generally considered that the parole law is designed to increase jury sentences and thus favors the State, not the accused. *Id.* at 663. In *Underwood*, a similar argument was made as in this case—the parole law instruction would have favored the defendant because of the flat time requirement and the one-half rule in light of the youth of the defen-

dant and his impaired mental faculties. *Id.* In *Underwood*, we pointed out that the sexual assault was on a four-year-old child; that the defendant had a history of misdemeanor assaults; and that he was on deferred adjudication community supervision for assault. Further, the State's argument did not mention parole or good conduct time. We held that the omission of the statutory parole law instruction was not egregious error.

Vanschoyck also cites us to our cases in *Hill v. State*, 30 S.W.3d 505 (Tex.App.-Texarkana 2000, no pet.), and *Rogers v. State*, 38 S.W.3d 725 (Tex.App.-Texarkana 2001, pet. ref'd). *Rogers* was similar in that the trial court omitted the parole law instruction, but the issue before this Court was whether the trial court erred by sending an incorrect response to a jury question about the parole law. *Id.* at 728. The trial court responded to a jury question by sending an answer concerning parole that did not incorporate all the provisions of the statutory parole law instruction. This Court cited *Ramos v. State*, 831 S.W.2d 10, 17–18 (Tex.App.-El Paso 1992, pet. ref'd), for the proposition that, where a defendant did not object to the absence of the parole law instruction if the jury raises a question about parole law the court is required to give a full and complete response. The response given to the jury in *Hill* was incomplete, advising the jury that a life sentence meant the defendant must serve a minimum of thirty years before being eligible for parole, but the instruction did not point out that eligibility for parole did not guarantee it would be granted, or that the application depended on factors that could not be predicted. It also failed to advise the jury that it could consider only the existence of the parole law and not consider how it might be applied to that particular defendant. In other words, the trial court gave the jury information that the defendant could possibly be discharged

early, but did not identify the limitations placed on the obtaining of parole. This Court found that the instruction given was error and, due to the State's argument to the jury on the issue of parole, found such error caused egregious harm. Additionally, Rogers was assessed the maximum punishment (life imprisonment). It could very well be said that such an incomplete and inaccurate instruction is worse than no instruction at all. We believe *Rogers* offers some assistance in determining the outcome of this case, but we do see a major difference in the procedural background of the two cases.

In *Hill*, the court gave a parole law instruction, but improperly advised the jury the defendant would not be eligible for parole until the actual time served plus good conduct time equaled one half of the sentence or thirty years. In reality, since the defendant was convicted of aggravated robbery, he was not eligible for good conduct time. This Court found the instruction was a misstatement of the law and constituted egregious error. The obvious difference in *Hill* and this case is that in *Hill* the jury was instructed concerning parole, but the instruction misstated the law to the defendant's detriment. Here, the jury was not given any instruction concerning the parole law. The question in this case is whether the complete omission of the parole law instruction constitutes egregious harm under the facts and circumstances presented. We do not believe that it does.

The procedural background of this case is much more similar to *Underwood* than *Rogers* or *Hill*. Both this case and *Underwood* involved the complete omission of the parole law instruction. As we did in *Underwood*, we look at the relevant facts to determine if the error caused egregious harm. Here, the jury assessed a punishment of ten years' confinement, which is the mid-point of the range it was to consider, even though the State argued that the facts of the case merited a twenty-year sentence. The facts presented to the jury were that Vanschoyck took B.J. and another female onto a country road after they had all been drinking. At the guilt/innocence phase, the evidence was that Vanschoyck had B.J. perform oral sex on him, and he then performed oral sex on her. Vanschoyck testified at the punishment hearing at first that he "never touched her," but later admitted that he drank "a gallon of whiskey" and that the incident "[M]ight have happened. But like I said, I was drinking that gallon of whiskey." No other witnesses testified on behalf of Vanschoyck.

As we have noted, no objections were made to the jury charge. This is significant because a reasonable argument can be made that the better trial strategy is to forego an objection that the parole law instruction was omitted. As several courts have pointed out, the original rationale for the Legislature requiring the inclusion of this issue was not to aid defendants in obtaining more lenient sentences. Most courts have agreed that the parole law instruction chiefly favors the State,[3] and an attorney could reasonably decide not to object to its omission, which could be promptly cured if such an objection was presented. In addition, no argument was made during the State's closing argument regarding the parole law instruction,

---

3. *Arnold v. State*, 786 S.W.2d 295, 300 (Tex. Crim.App.1990) (citing *Gabriel v. State*, 756 S.W.2d 68, 70 (Tex.App.-Houston [1st Dist.] 1988, no pet.)) (Obviously the only purpose in allowing jurors to consider "existence" of parole law and good conduct time is to inform their assessment of punishment; the instruction is "[c]learly designed to increase [the] sentence.").

whereas in *Rogers,* the State specifically mentioned parole to the jury.

After considering the entire charge of the court, the facts presented, and the arguments of counsel to the jury, we do not believe that Vanschoyck has shown that the failure to include the parole law instruction in the jury charge resulted in egregious harm.

We affirm the judgment of the trial court.