In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00212-CR


______________________________




JAVIER EDWUARDO VILLARREAL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 20586




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Javier Edwuardo Villarreal was convicted by a jury for aggravated assault on his
girlfriend by using a rolling pin, alleged to be a deadly weapon. See Tex. Pen. Code Ann.
§ 22.02(a)(2) (Vernon Supp. 2006). The jury assessed the maximum punishment of twenty
years' imprisonment. Villarreal does not challenge the sufficiency of the evidence, nor
does he challenge any aspect of the guilt/innocence phase of his trial. Instead, he
complains only of two issues relating to punishment. We, therefore, discuss only the
relevant factual and procedural background; apply the pertinent law; and, agreeing that
harmful, reversible error occurred, remand the cause to the trial court for a new trial on
punishment. See Tex. Code Crim. Proc. Ann. art. 44.29 (Vernon Supp. 2006).

I. BACKGROUND

 After the jury returned its guilty verdict and heard the evidence presented at the
punishment phase, the trial court submitted to the jury a charge on punishment that omitted
the mandatory parole instruction. See Tex. Code Crim. Proc. Ann. art. 37.07, § 4 (Vernon
2006). After beginning its deliberations, the jury sent a note to the trial court that read as
follows:

 Is it possible to find out how many years he would actually serve compared
to how many we sentence? 


 20 yrs =

 15 yrs =


The trial court responded to the jury's note as follows:

 No. Such information is completely beyond our control. It is controlled
entirely by the Board of Pardons and Paroles.


 The record does not show that the trial court followed the required procedure of
reading the jury's note in open court and allowing Villarreal or his attorney the opportunity
to object to the response. See Tex Code Crim. Proc. Ann. art. 36.27 (Vernon 2006). (1) 
While Villarreal does not specifically complain of the trial court's failure to comply with
Article 36.27, (2) he does urge two related points of error. First, he contends the trial court
erred by completely omitting the mandatory parole instruction from its charge to the jury. 
Second, he complains that the trial court's response did not comply with Section 4 of Article
37.07 and, thus, caused egregious harm.

II. APPLICABLE LAW

 When the trial court responds substantively to a jury question during deliberations,
that communication essentially amounts to an additional or supplemental jury instruction. 
See Daniell v. State, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993). When a defendant
does not object to an error in the jury charge, such defendant is entitled to reversal of the
jury's verdict only if the reviewing court determines that the error caused the defendant
such egregious harm that he or she was deprived of a fair and impartial trial. See Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); Underwood v. State,
927 S.W.2d 661, 663 (Tex. App.--Texarkana 1996, no pet.); Roberts v. State, 849 S.W.2d
407, 409 (Tex. App.--Fort Worth 1993, pet. ref'd). We determine this by considering the
entire jury charge, the state of the evidence, the argument of counsel, and any other
relevant information in the record as a whole. See Almanza, 686 S.W.2d at 171;
Underwood, 927 S.W.2d at 663. Direct evidence of harm is not necessary in order to
establish egregious harm. See Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App.
1996); Hill v. State, 30 S.W.3d 505, 507-08 (Tex. App.--Texarkana 2000, no pet.).

 Article 37.07 provides the following mandatory parole instruction:

 Under the law applicable in this case, the defendant, if sentenced to
a term of imprisonment, may earn time off the period of incarceration
imposed through the award of good conduct time. Prison authorities may
award good conduct time to a prisoner who exhibits good behavior, diligence
in carrying out prison work assignments, and attempts at rehabilitation. If a
prisoner engages in misconduct, prison authorities may also take away all or
part of any good conduct time earned by the prisoner.


 It is also possible that the length of time for which the defendant will
be imprisoned might be reduced by the award of parole.


 Under the law applicable in this case, if the defendant is sentenced to
a term of imprisonment, he will not become eligible for parole until the actual
time served equals one-half of the sentence imposed or 30 years, whichever
is less, without consideration of any good conduct time he may earn. If the
defendant is sentenced to a term of less than four years, he must serve at
least two years before he is eligible for parole. Eligibility for parole does not
guarantee that parole will be granted.


 It cannot accurately be predicted how the parole law and good
conduct time might be applied to this defendant if he is sentenced to a term
of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.


 You may consider the existence of the parole law and good conduct
time. However, you are not to consider the extent to which good conduct
time may be awarded to or forfeited by this particular defendant. You are not
to consider the manner in which the parole law may be applied to this
particular defendant.


Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a).

III. ANALYSIS

A. Omission of Parole Instruction Did Not Cause Egregious Harm

 We addressed this same issue in Vanschoyck v. State, 189 S.W.3d 333 (Tex.
App.--Texarkana 2006, pet. filed). Vanschoyck contended the trial court erred "by failing
to include in the jury charge a parole law instruction" and relied on our opinion in Rogers
v. State, 38 S.W.3d 725 (Tex. App.--Texarkana 2001, pet. ref'd), to support his position. 
Vanschoyck, 189 S.W.3d at 336. We distinguished Rogers on the basis that the trial court
in Rogers submitted an incorrect parole instruction in response to a jury note. Id. at 337. 
In contrast, the issue in Vanschoyck was the omission of any parole law instruction, rather
than the submission of an inaccurate one. Id. at 338. We reviewed the relevant evidence,
the punishment assessed, and the absence of any objection. Id. We also discussed the
probable effect of the parole law instruction on juries: "Most courts have agreed that the
parole law instruction chiefly favors the State, and an attorney could reasonably decide not
to object to its omission." Id. (citations and footnotes omitted). Ultimately, we concluded
the omission of the parole instruction did not constitute egregious harm.

 Similarly, here, we note the severity of Villarreal's assault on his girlfriend as a
consideration supporting the jury's assessment of the maximum sentence. We reiterate
our position on the effect of the parole law instruction and conclude that, on these facts,
the omission of the parole instruction did not constitute egregious harm. 

B. Noncomplying Parole Instruction in Response to Jury Note Did Cause
Egregious Harm


 In light of the generally accepted effect of the parole instruction, and the absence
of any objection by Villarreal, the initial omission of the parole instruction was not egregious
error. However, when it became apparent the jury was concerned with application of the
parole law, the trial court was required to give the mandatory parole instruction pursuant
to Article 37.07. See Ramos v. State, 831 S.W.2d 10 (Tex. App.--El Paso 1992, pet.
ref'd). The trial court's deviation from Article 37.07 under these circumstances caused
egregious harm.

 At issue in another case before this Court was an instruction similar to the one
submitted in the instant case. In Underwood, the trial court submitted, without objection,
the following instruction in its original charge to the jury:

 You are further instructed that in determining the punishment in this
case, you are not to discuss among yourselves how long the defendant will
be required to serve any sentence you decide to impose. Such matters
come within the exclusive jurisdiction of the Board of Pardons and Paroles
and the Governor of the State of Texas and are no concern of yours.

927 S.W.2d at 662. Underwood complained that the submission of this charge constituted
egregious harm. This Court disagreed, pointing to the ample evidence to support the jury's
assessment of a seventy-year sentence. Id. at 663. Further, neither party mentioned
parole or good time conduct at any point during trial. Id. In light of these considerations,
the submission of this noncomplying instruction was not egregious error. Id.

 The El Paso court examined different circumstances in Ramos in which the original
punishment charge did not include any instruction regarding parole. Later, the jury sent
a note to the trial court specifically requesting information on the application of parole. 831
S.W.2d at 17. The trial court responded to the jury's note "by stating he could only refer
them to the evidence and the court's charge." Id. Ramos objected and unsuccessfully
argued that the jury should be instructed not to consider the effects of parole in its
deliberations. Id.

 The El Paso court noted that, by not objecting to the original punishment charge,
Ramos may have waived the mandatory inclusion of the parole instruction. Id. at 18. 
However, the court emphasized that, when it became clear the jury was considering the
application of parole during its deliberations, it became incumbent on the trial court to give
the jury "a curative instruction that they did not cloud their deliberations with parole." Id. 
The Ramos court explained that the jury's note to the trial court "revived" the issue of
parole instruction after the original punishment charge was submitted to the jury without
reference to parole law and without objection to that omission. Id. 

 The court acknowledged that appellate courts generally presume the jury followed
the instructions, but noted that this presumption is rebuttable. See id. (citing Rose v. State,
752 S.W.2d 529, 554 (Tex. Crim. App. 1988)). Such was the case in Griffin v. State, 811
S.W.2d 221, 224 (Tex. App.--Houston [1st Dist.] 1991, no pet.), a case in which a parole
instruction was given and, therefore, no presumption arose that the jury did not consider
the effect of the parole laws. The Ramos court concluded the presumption that the jury
followed the instruction was "rebutted due to the undeniable fact that the jury initially
strayed from the law as given by the court in its charge" and found it "improbable that the
subsequent generic censure from the court referring the jury to the evidence and the
charge sufficiently limited [its] deliberations to the proper parameters." Ramos, 831
S.W.2d at 18.

 The Ramos court concluded that, on those facts, it was reasonable to assume the
jury did consider its own understanding of the application of the parole law in assessing
punishment. Id. at 19. Even though there was no mention of parole in jury arguments, the
court concluded that such absence did not "overcome the strong possibility" that the jury
considered parole in its deliberations. Id. The court held that the record did not establish
beyond a reasonable doubt that the trial court's refusal to instruct the jury not to consider
parole did not contribute to the assessment of the forty-year sentence. Id. The Ramos
court reversed the trial court's judgment as to punishment and remanded the cause to the
trial court for a new trial on punishment. Id. 

 While the Ramos court addressed the charge error to which the defendant had
objected, we were later faced with a very similar situation in which the defendant did not
object to the trial court's response to a jury note. See Rogers, 38 S.W.3d 725. In Rogers,
we had to determine whether the trial court's inaccurate parole instruction in response to
a jury's note constituted egregious harm.

 In Rogers, the original charge on punishment also did not include a parole law
instruction. As in Ramos, the jury in Rogers later sent a note to the trial court that asked
the trial court how many years a life sentence was and asked the trial court to define "life." 
Id. at 728. The trial court responded with a rather detailed explanation:

 IF YOU ASSESS A LIFE SENTENCE, THE DEFENDANT MUST
SERVE A MINIMUM OF 30 CALENDAR YEARS BEFORE THE
DEFENDANT WOULD BE ELIGIBLE FOR PAROLE. THE BOARD OF
PARDONS AND PAROLES WOULD THEN DETERMINE IF THE
DEFENDANT IS GRANTED PAROLE.

 

Id. The trial court's response failed to comply with the mandatory instruction required by
Section 4 of Article 37.07. Further, the record failed to show that the trial court read its
response to the jury in open court, nor did it show that the trial court submitted the
response to counsel to allow for objection. (3) See id. at 729; see also Tex. Code Crim.
Proc. Ann. art. 36.27. Careful to note that the procedural failures of the trial court were
not specifically appealed, this Court noted that Rogers complained that the trial court's
response constituted "an improper charge advising the jury of the mathematical effect of
parole law." Rogers, 38 S.W.3d at 729.

 We examined the record to determine whether the noncomplying instruction
constituted egregious error. We considered the trial court's failure to comply with the
procedural requirements of Article 36.27, as well as the obvious failure of the trial court's
response to provide the information required by Article 37.07. See id. We pointed to the
fact that the State referred to parole during its closing argument to the jury. Id. at 730. We
considered the jury's express interest in parole considerations, as shown by its note to the
trial court. Finally, we considered the fact that the jury assessed a life sentence. In light
of those considerations, we concluded the trial court's noncomplying response to the jury's
note constituted egregious harm. Id. We reversed the trial court's judgment as to
punishment and remanded the matter for a new trial on punishment. Id.; see also Hill, 30
S.W.3d at 508-09 (concluding that an express misstatement of parole law to jury that
misled jury about parole system constituted egregious harm).

 In the instant case, we find elements consistent with Underwood, Ramos, and
Rogers. Of course, the trial court's response here is most similar to the response the trial
court submitted in its original charge to the jury in Underwood. However, while the
Underwood response did go so far as to direct the jury not to consider or discuss parole
in its deliberations, the trial court's response here could be read to stop short of such
direction. Again, the trial court responded as follows:

 No. Such information is completely beyond our control. It is controlled
entirely by the Board of Pardons and Paroles.


The trial court's response does explain that the Texas Board of Pardons and Paroles
maintains control over parole, and such explanation could be read to infer that the matter
is of no concern to the jury. However, a more literal reading of the response yields the
conclusion that the jury was never actually instructed not to consider parole while
assessing punishment. So, in that way, the instruction in the instant case is perhaps less
informative and less curative than that given in Underwood. A glaring distinction between
the instant case and Underwood, in which the flawed instruction was submitted without
objection in the trial court's original charge on punishment, is the presence of the jury note
in the instant case which demonstrated the jury's interest in and consideration of parole
during its deliberations.

 The presence of the jury note in this case makes it similar to Ramos and Rogers. 
In all three cases, the trial court was called on to give the Article 37.07 parole instruction
in response to the jury's question raising issues about parole. Whether its failure to do so
constitutes egregious harm here depends on our examination of the record. 

 We note that, unlike the State's argument in Rogers, the State in this case did not
specifically mention parole in its jury argument. However, as in Rogers, the jury in this
case assessed the maximum sentence. And, as in Ramos, it seems reasonable to
conclude that, in the absence of a proper instruction in response to its note, the jury here
did continue to consider parole during its assessment of punishment. 

 The severity of the assault against Villarreal's girlfriend does lend some support to
the conclusion that the erroneous instruction did not cause egregious harm. However, we
do not think this consideration alone overcomes the other considerations weighing in favor
of the conclusion that the submission of the noncomplying parole instruction did constitute
egregious harm. 

 Because the jury obviously had been considering the impact of the parole law on
Villarreal's punishment, because the record fails to demonstrate that the trial court followed
the proper procedural steps in responding to this note and then failed to submit the
mandatory parole law instruction in accordance with Article 37.07, and because the jury
assessed the maximum punishment, we conclude the trial court's submission of the
noncomplying instruction constitutes egregious harm.

IV. CONCLUSION

 For the above-stated reasons, we reverse the trial court's judgment as to
punishment and remand the cause to the trial court for a new trial only on that issue. See
Tex. Code Crim. Proc. Ann. art. 44.29(b).



 Donald R. Ross

 Justice


Date Submitted: April 24, 2006

Date Decided: October 17, 2006


Publish
1. Article 36.27 of the Texas Code of Criminal Procedure provides the following
instruction with regard to notes from the jury:


 When the jury wishes to communicate with the court, it shall so notify
the sheriff, who shall inform the court thereof. Any communication relative
to the cause must be written, prepared by the foreman and shall be
submitted to the court through the bailiff. The court shall answer any such
communication in writing, and before giving such answer to the jury shall use
reasonable diligence to secure the presence of the defendant and his
counsel, and shall first submit the question and also submit his answer to the
same to the defendant or his counsel for objections and exceptions, in the
same manner as any other written instructions are submitted to such
counsel, before the court gives such answer to the jury, but if he is unable to
secure the presence of the defendant and his counsel, then he shall proceed
to answer the same as he deems proper. The written instruction or answer
to the communication shall be read in open court unless expressly waived
by the defendant.


Tex. Code Crim. Proc. Ann. art. 36.27.
2. If the trial court gives additional instructions without following Article 36.27, the trial
court commits reversible error. See Smith v. State, 513 S.W.2d 823, 829 (Tex. Crim. App.
1974); Martin v. State, 654 S.W.2d 855, 857 (Tex. App.--Dallas 1983, no pet.). It is
incumbent on a defendant, however, to bring the easily correctable error to the court's
attention by objection or formal bill of exception. Otherwise, we presume the trial court
acted consistent with the statute, and no reversible error is shown. See Green v. State,
912 S.W.2d 189, 192 (Tex. Crim. App. 1995); Smith, 513 S.W.2d at 829; Hudson v. State,
128 S.W.3d 367, 377 (Tex. App.--Texarkana 2004, no pet.); Talley v. State, 909 S.W.2d
233, 235 (Tex. App.--Texarkana 1995, pet. ref'd).
3. Article 36.27 also requires that "[a]ll such proceedings in felony cases shall be a
part of the record and recorded by the court reporter." Tex. Code Crim. Proc. Ann. art.
36.27. Again, we do not address the failure to comply with Article 36.27 as a point of error
in and of itself. Rather, in our review of the entire record for egregious harm, the absence
of such recordings is a consideration. See Rogers, 38 S.W.3d at 729.