Opinion issued
June 30, 2011



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-10-00543-CR

———————————

RUBEN LOPEZ, Appellant

V.

THE
STATE OF TEXAS, Appellee



 



 

On Appeal from the 176th
District Court

Harris County, Texas



Trial Court Case No. 1184459

 



 

 

MEMORANDUM
OPINION

          A
jury found appellant, Ruben Lopez, guilty of aggravated sexual assault.[1]  Appellant pleaded true to one
felony-enhancement allegation, and the jury assessed appellant’s punishment at
80 years in prison.  In one issue,
appellant contends that the trial court erred when it denied his motion for
directed verdict in which he argued that the State had failed to offer
sufficient evidence to establish venue.  

          We
affirm.  

Background

          In September 2008, the
complainant, Y.M., lived with her six minor children in a trailer home off Aldine
Westfield Road.  At that time, Y.M. was
not able to pay the rent on the trailer. 
Y.M. heard that she could get a loan by using her car title as collateral.  Y.M. searched for a place that would give her
such a loan.  As a result of the search,
Y.M. found appellant, a car mechanic. 
Appellant told Y.M. that he would fix her car, which had been damaged by
Hurricane Ike, and said that he could give her a loan for her car title.  

          The
next night, appellant came to Y.M.’s home. 
Appellant told Y.M. that he would loan $1,500 to her but stated that they
needed to go to his brother’s house to get the money.  Y.M. agreed and got in appellant’s car.  Y.M. did not know where appellant’s brother
lived, but was familiar with the main streets that appellant took en
route.  Appellant then turned onto a dark
side street with which Y.M. was not familiar. 
Appellant was drinking a beer while driving.  When Y.M. asked him to stop drinking,
appellant called her derogatory names and became angry.  

Appellant pulled into an
empty lot and held a knife to Y.M.’s side. 
Y.M. begged him not to kill her because she had children.  Appellant responded by threatening her
children.  Appellant then told Y.M. to take
off her clothes.  After she took off her
clothes, appellant put away the knife and started choking Y.M.  Appellant got out of the car and physically
removed Y.M. from the vehicle.  Y.M.
tried to run away but appellant grabbed her. 
Appellant choked Y.M. again and made her lie down on the grass.  Appellant continued to choke Y.M. and had
sexual intercourse with her.  After appellant
allowed Y.M. to get back into the car, appellant continued to engage in sexual
intercourse with Y.M.  When he had
finished, appellant retrieved a handgun from the backseat and threatened to
kill Y.M.  Appellant then allowed Y.M. to
get dressed and said that they were leaving. After driving a short distance
from the lot, appellant ran over a branch, which got stuck on the undercarriage
of the car.  

At that time, much of the
area was without electricity following Hurricane Ike.  Y.M. convinced appellant to drive to a Texaco
gas station that had electricity.  Appellant
parked at the Texaco.  While appellant was
under the car trying to dislodge the branch, Y.M. got out and ran into the
Texaco store where the clerk was working. 
She told the clerk that she had been raped, and the clerk called the
police.  While they waited for the
police, appellant came in and tried to convince Y.M. to leave with him.  She refused, and appellant left in his
car.  

The police arrived a short
time later.  Y.M. told the officers about
the sexual assault.  After the police
took her home to check on her children, Y.M. was transported to the hospital
for a sexual-assault examination.  The
forensic nurse conducting the examination noted that Y.M. had red bruising on
her neck.  The nurse collected samples
from Y.M. for DNA analysis.  A laboratory
analysis confirmed that appellant’s sperm was in the vaginal and perineal swabs
taken from Y.M. during the examination.

          Appellant
was arrested and charged with the offense of aggravated sexual assault.  The indictment alleged that the offense had
been committed in Harris County, Texas.  The
indictment also included an enhancement paragraph alleging that appellant had
been previously convicted of the felony offense of theft.  

          The
case was tried to a jury.  At the close
of the State’s case, appellant moved for directed verdict.  Appellant argued that the State had failed to
prove that Y.M. was sexually assaulted in Harris County.  The trial court denied the motion.

          The
jury found appellant guilty of aggravated sexual assault as alleged in the
indictment.  Appellant pleaded guilty to
the enhancement allegation.  The jury
assessed punishment at 80 years in prison. 
This appeal followed.

 

Motion for Directed Verdict
Based on Venue Challenge

          In
one issue, appellant asserts, “The trial court committed reversible error by denying
appellants motion for a directed verdict because the State failed to establish
venue in Harris County.”  More
specifically, appellant contends that the State failed to “prove that the
offense occurred in Harris County,” as was alleged in the indictment.  

A.      Legal Principles: Sufficiency Review for
Establishing Venue

          We
view a challenge to a trial court’s denial of a motion for instructed verdict
on the ground that venue was not proven as an attack on the sufficiency of the
evidence to establish venue.  Thierry v. State, 288 S.W.3d 80, 90
(Tex. App.—Houston [1st Dist.] 2009, pet. ref’d).  Although it must be established, venue is not
a “criminative fact” and thus not a constituent element of an offense.  Id. (citing
Fairfield v. State, 610 S.W.2d 771,
779 (Tex. Crim. App. 1981)).  As a result,
the State need only prove venue by a preponderance of the evidence.  Id.;
see also Tex. Code Crim. Proc. Ann. art. 13.17 (Vernon 2005).  Because it is not an essential element of an
offense, the sufficiency of the evidence to establish venue is not reviewed
under the traditional Jackson v. Virginia[2] standard, nor any
other standard established for reviewing the sufficiency of the essential
elements of an offense.  Thierry, 288 S.W.3d at 90.  Rather, we determine whether the trier of
fact could reasonably conclude from the evidence that the offense was committed
in the county alleged.  Id. (citing Rippee v. State, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964)).  

B.      Analysis: Sufficiency of Evidence to
Establish Venue in Harris County

          Here, the indictment
alleged, and the jury implicitly found, that appellant committed the offense of
aggravated sexual assault against Y.M. in Harris County.  We must determine whether the jury could have
reasonably concluded from the evidence that the offense had been committed in Harris
County. 

          At
trial, the evidence showed that although she knew the general area where she
had been sexually assaulted, Y.M. was not able to tell the investigating police
officers the specific location of the abandoned lot where she had been attacked.  Y.M. testified that not long before trial, however,
a police investigator had contacted her and requested that she make an attempt
to locate the place where she had been assaulted.  Y.M. testified that she and a friend drove to
the area.  Y.M. stated that while they
drove around, she recognized the abandoned lot where she had been sexually assaulted.  The lot was on Raymac Street.  Y.M. testified that she was able to identify
the lot by surrounding landmarks.  She
stated that she got out of the car and walked around the lot to be certain that
it was the location where she had been sexually assaulted.  

Y.M also testified that when
she and appellant were driving before he assaulted her, she knew that they were
driving down Airline Drive.  Y.M.’s
testimony indicates that appellant turned from Airline Drive onto the street,
which she later determined to be Raymac Street, where she was sexually
assaulted.  Y.M. confirmed that when they
turned off Airline Drive they were still in Harris County.  

One of the investigating
police officers testified that the Texaco station to which Y.M. escaped is
located in Harris County.  The officer
also testified that Harris County extends for 10 miles in all directions from
the Texaco station.  The State introduced
an aerial photographic map on which Y.M. identified the location of the Texaco station
and the location on Raymac where she was sexually assaulted.  The map shows that the Raymac location and
the Texaco are in the same area.  

In addition, Y.M. testified
that the branch got stuck under appellant’s car a short distance from the lot
on Raymac.  When asked whether, at the
time, she knew where she was, she said that she knew they were “near
Airline.”  When asked, Y.M. confirmed
that the location was in Harris County.

In his brief, appellant intimates
that certain evidence undermines the credibility of Y.M.’s testimony, including
her testimony supporting a finding that the sexual assault occurred in Harris
County.  Appellant points out that when
she initially spoke to the police, Y.M. did not know the exact location of
where she had been sexually assaulted.  One
investigating officer testified that Y.M. had indicated that she knew the
general area of where she had been attacked. 
Another officer testified that Y.M. knew that the attack had occurred “in
the area of Airline,” which the officer confirmed was in Harris County.  

Appellant also points out
that when the prosecutor asked Y.M. whether she had “traveled in the
neighborhood” since the attack to determine whether she could remember the
exact location of the assault, Y.M. responded, “No.”  The prosecutor then rephrased the questioned
and asked Y.M., “Did you recently drive to the scene?”  Y.M. responded in the affirmative and described
how she was able to locate the abandoned lot where she had been sexually
assaulted.  

Appellant further points out
that Y.M. referred to the location of the sexual assault as a “wooded lot,” but
then at another time, she referred to it as an “abandoned lot.”  When asked about the distinction, Y.M.
testified it was the “same thing” to her. 


The credibility of the
witnesses and their testimony is within the domain of those matters entrusted
to a jury for resolution.  Tex. Code Crim. Proc. art. 38.04
(Vernon 1979); Sudds v. State, 140
S.W.3d 813, 818 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (explaining jury’s
right to judge credibility of complaining witness and resolve any inconsistency
in testimony relevant to venue).  To the
extent there were inconsistencies in Y.M.’s own testimony, between her
testimony and that of the other witnesses, or between her testimony and what
she may have stated earlier to the police, such conflicts were matters to be
resolved by the jury in determining the credibility and weight to be accorded her
testimony.  See Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998); Sudds, 140 S.W.3d at 818.  

Appellant also cites
evidence weighing against a finding that the offense was committed in Harris
County.  Appellant asserts that the evidence
shows that Y.M. was uncertain how long she was with appellant the night of the
offense and asserts that “it was probably at least four hours.”  He contends, “In four hours, a lot of distance
can be driven, including [to] areas outside of Harris County.”  Appellant appears to base this calculation on
Y.M.’s cross-examination testimony that she believed that she got in the car
with appellant between 7:00 p.m. and 8:00 p.m., and evidence that the police
were not called to the Texaco station until approximately midnight.  

In this line of questioning,
however, Y.M. also stated that she “[did] not recall” what time the police were
called “because I was focusing on what had happened to me, not the hour.”  When the defense asked Y.M., “So then you
were in the vehicle with Mr. Lopez from 8:00 o’clock at night ’til midnight,
for four hours,” Y.M. responded, “Yes, where he—to the place where he took me and abused me.”  

Although it could have
inferred from the evidence that appellant and Y.M. were driving for nearly four
hours, nothing required the jury to draw such inference.  From Y.M.’s testimony, the jury could have reasonably
inferred that the amount of time that Y.M. was with appellant is uncertain
because Y.M. was traumatized by the sexual assault, or it could have reasonably
believed that appellant was assaulting Y.M. for most of the four hours.[3]  

Appellant also contends that
the evidence is not sufficient to support the venue finding because the State
did not offer evidence directly showing that the abandoned lot on Raymac identified
by Y.M. was in Harris County.  Appellant
asserts that the State showed only that the site was in an area and provided
only a “vague location.”  Appellant also
points out that a map proffered by the State to show venue “had no indicators
of county lines or any other jurisdictional markers.”  

Venue may be proved by
direct or circumstantial evidence, Black
v. State, 645 S.W.2d 789, 790 (Tex. Crim. App. 1983), and a jury may make
reasonable inferences from the evidence to decide the issue of venue.  Thierry,
288 S.W.3d at 92 (citing Edwards v. State,
97 S.W.3d 279, 285 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d)).  Here, the record shows that Y.M testified that
when she and appellant were driving before the assault, she knew that they were
driving down Airline Drive.  Y.M.’s
testimony indicates that appellant turned from Airline Drive onto the street, which
she later determined to be Raymac Street, where she was sexually
assaulted.  Y.M. confirmed that when they
turned off Airline Drive they were still in Harris County.  One of the investigating officers testified
that Y.M. knew that the attack had occurred “in the area of Airline,” which the
officer confirmed was in Harris County.  Y.M.
also testified that the branch got stuck under appellant’s car after they had
driven a short distance from the lot on Raymac. 
When asked whether she knew where she was at the time, Y.M. stated that
she knew they were “near Airline.”  Y.M.
confirmed that the location was in Harris County.

One of the investigating
police officers testified that the Texaco station to which Y.M. escaped is
located in Harris County.  The officer also
testified that Harris County extends for 10 miles in all directions from the
Texaco station.  The State introduced an
aerial photographic map on which Y.M. identified the location of the Texaco
station and the location on Raymac where she was sexually assaulted.  The map shows that the Raymac location and
the Texaco are in the same area.

To reiterate, venue need not
be proved beyond a reasonable doubt but may be shown by a preponderance of the
evidence.  See Rippee, 384 S.W.2d at
718; see also Murphy v. State, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003) (citing
Tex. Code Crim. Proc. Ann. art.
13.17).  Here, the State offered
sufficient evidence to meet its burden.  We
conclude the jury could have reasonably concluded from the evidence that appellant
sexually assaulted Y.M. in Harris County.[4]  See Rippee,
384 S.W.2d at 718; see also Vanschoyck v. State, 189 S.W.3d 333, 335–36 (Tex. App.—Texarkana 2006, pet. ref’d) (holding
that venue established by preponderance of evidence in case in which victim
testified that sexual assault occurred “around the Lodi road, a blacktop”;
investigator testified that “no one knew exactly the location.  It was somewhere in the Lodi area, which is in
the south part of the county”; investigator was further asked, “and that’s in
Cass County, correct?” to which he answered, “Yes,” and there was no evidence
to contrary).  

We hold that the trial court
did not err when it denied appellant’s motion for directed verdict.  We overrule appellant’s sole issue. 

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices
Jennings, Higley, and Brown.

Do not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 22.021
(Vernon 2011).





[2]        443 U.S. 307, 99 S. Ct. 2781, (1979).





[3]
       Appellant’s argument regarding the amount of time
appellant and Y.M. were together rings similar to the “reasonable hypotheses”
standard, which required the evidence to exclude every reasonable hypothesis
inconsistent with the appellant’s guilt. 
However, the Court of Criminal Appeals abolished the “reasonable
hypotheses” standard in Geesa v. State,
820 S.W.2d 154, 161 (Tex. Crim. App. 1991), overruled
on other grounds by Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim. App.
2000).  

 





[4]
       Appellant argues that under the authority of Black v. State, 645 S.W.2d 789, 790
(Tex. Crim. App. 1983), the State failed to prove that Harris County was the
proper venue.  We note that the facts of Black are distinct from the instant case in significant
aspects.  In Black, the appellant challenged his conviction for possession of
marijuana and argued that the State failed to prove that the offense occurred
in Smith County, as alleged in the information.  Id.  There, the only evidence offered to prove venue was the testimony of two
police officers, who testified that they worked for Tyler Police Department.  See id. at
790–91.  One officer testified that he
was “in the twenty-one hundred block of North Alfred” on the day of the
appellant’s arrest, and the other officer testified that he was “on duty” and
assisted the other officer in arresting the appellant.  Id.  The Court of Criminal Appeals concluded that because
the record was otherwise “devoid of either direct or circumstantial evidence relating
to venue,” the State failed to establish venue.  Id.  In contrast, here, there is ample evidence,
including Y.M.’s testimony, the police officers’ testimony, and maps of the
area offered in conjunction with the testimony, supporting a reasonable
inference that the offense occurred in Harris County.  In his
brief, appellant fails to account for the critical evidentiary distinctions
between this case and Black.