

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00225-CR

VICTOR GENE LANGFORD                                    APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

## FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1039705D

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

A jury convicted Appellant Victor Gene Langford of indecency with a child. In two points, he challenges the sufficiency of the evidence to prove venue and identity. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

M.C. is Appellant's niece. She was fifteen years old when she testified that Appellant used to babysit her at his home in Fort Worth after her parents had dropped her off from school. She also testified that she and Appellant generally spent the time watching television but that occasionally they wrestled or played hide-and-seek. M.C. further testified that often during the wrestling sessions Appellant would "rub his self [sic], like his body against mine," and "[get] on top and he would pin me down or hold my hands up." She testified that, "[h]e would lift my shirt and rub his self against me" and that these rubbing-and-pinning encounters transpired "about nine times" but that she remembered only three of them specifically.

The offense for which the jury found Appellant guilty occurred in one of his bedrooms, during hide-and-seek when M.C. was nine or ten years old. M.C. testified that Appellant "[got] on top of me and he would rub his hand up and down my back. And one day he reached down to my pants into my underwear and touched me." M.C. noted specifically that Appellant touched her vagina with his hand, moving his hand "around," and "up and down." She could not recall how long the touching lasted but remembered that she felt "very uncomfortable and scared." She testified that this was the only time that Appellant had ever touched her "private area."

M.C. further testified that she felt "too scared" to tell anyone about the incident for some time after it happened. The following summer, she went on a

2

family vacation to Mexico to visit her grandmother, and during that trip she told her grandmother, whom she trusted. M.C. testified that she told her grandmother because she felt a need to tell someone about what had happened. M.C.'s grandmother then told M.C.'s parents, who, after the family returned home to Fort Worth, took M.C. to Cook Children's Hospital for an examination. Sandra Onyinanya, the pediatric nurse practitioner who conducted the examination, testified that she saw no evidence of physical injury or trauma and that M.C. told her that Appellant had not penetrated her with his hand or genitals but had touched her "on top" of her genital area. Onyinanya added that because there had been no penetration and so much time had elapsed between the touching and the examination, it was normal and to be expected that the examination would produce no physical evidence of sexual violation.

M.C.'s parents notified the Fort Worth Police Department, and following an investigation, Appellant was charged with indecency with a child, tried and convicted by a jury, and sentenced to six years' confinement.

## Venue

In his first point, Appellant argues that the evidence is insufficient to show that venue was proper in Tarrant County. Venue is proper in the county where the offense occurred. *See* Tex. Code Crim. Proc. Ann. art. 13.18 (West 2005). Venue is not considered an element of an offense; therefore, it need only be proven by a preponderance of the evidence. *See id.* art. 13.17 (West 2005); *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. [Panel Op.] 1981);

3

*Williams v. State*, 356 S.W.3d 508, 518 (Tex. App.—Texarkana 2011, pet. ref'd). *State v. Blankenship*, 170 S.W.3d 676, 681 (Tex. App.–-Austin 2005, pet. ref'd). When reviewing venue, we view all of the evidence in the light most favorable to an affirmative venue finding and ask whether any rational trier of fact could have found by a preponderance of the evidence that venue was proved. *Williams*, 356 S.W.3d at 518; *Vanschoyck v. State*, 189 S.W.3d 333, 336 (Tex. App.—Texarkana 2006, pet. ref'd.).

Moreover, if venue is not disputed in the trial court, we must presume it was proven unless the record affirmatively shows otherwise. Tex. R. App. P. 44.2(c)(1); *Williams*, 356 S.W.3d at 518; *Couchman v. State*, 3 S.W.3d 155, 161 (Tex. App.—Fort Worth 1999, pet. ref'd). A plea of "not guilty" is insufficient to dispute venue in the trial court. *Holdridge v. State*, 707 S.W.2d 18, 20–21 (Tex. Crim. App. 1986).

Appellant directs us to no record evidence that he disputed venue in the trial court and our review of the record has similarly failed to uncover such evidence. Therefore, we are left to determine whether the record affirmatively demonstrates that venue was not proper in Tarrant County. *See* Tex. R. App. P. 44.2(c)(1); *Williams*, 356 S.W.3d at 518. We conclude that it does not.

M.C. testified that the sexual contact at issue occurred in one of the bedrooms in Appellant's house. Onyinanya testified that M.C. told her that the touching last occurred "when [M.C.] was in Mexico last year", and that "[i]t always happened at his house." Both M.C. and Appellant's brother, Steven Langford,

4

testified that one of the exhibits provided by the State was a photograph of Appellant's house, and that the house in the photograph was located in Tarrant County, Texas. Fort Worth Police Officer Mark Pitt, who investigated the case, testified that the warrant for Appellant's arrest cited that the offense occurred at a residence in Tarrant County.

Appellant argues that the testimony of Officer Pitt and Steven Langford do not assist the State in its burden to prove venue, as neither was an eyewitness to the offense. This reasoning is unpersuasive, however, given that evidence of venue may be direct or circumstantial, and that the factfinder may make reasonable inferences from the evidence. *See Couchman*, 3 S.W.3d at 161; *Valdez v. State*, 993 S.W.2d 346, 349 (Tex. App.—El Paso 1999, pet. ref'd). The testimony of both men is direct evidence that Appellant owned the house displayed in the State's exhibit. Further, their testimony, when interpreted together along with the rest of the evidence, is circumstantial evidence that the offense occurred in Tarrant County, and thus assists in proving venue. We therefore reject Appellant's contention that Officer Pitt and Steven Langford's testimony is entitled to no weight.

Appellant next argues that although M.C. was an eyewitness and did indeed identify a photograph of Appellant's house as belonging to him, her testimony is insufficient to establish venue in Tarrant County. As support for this proposition, Appellant notes that M.C. never stated that (1) Appellant's house was located in Tarrant County, or that (2) the offense took place at "Uncle

5

Victor's house" or in "Uncle Victor's bedroom." Although M.C.'s testimony on its own may not be sufficient to establish venue in Tarrant County, it is sufficient when combined with other facts and testimony bearing on the issue. Here, although M.C. never testified that Appellant's house was located in Tarrant County, Officer Pitt stated that an arrest warrant had been issued for Appellant and that the location identified in the warrant was in Tarrant County. Steven Langford identified Appellant's house and testified that it was located in Tarrant County. This evidence, when taken together with M.C.'s testimony that the offense occurred in one of Appellant's bedrooms, would permit a rational jury to find by a preponderance of the evidence that the offense occurred in Tarrant County.

Appellant argues that M.C.'s failure to state that the offense occurred in "Uncle Victor's house" or "Uncle Victor's bedroom" renders her testimony insufficient or useless for the purpose of establishing venue in Tarrant County. Appellant contends that because M.C. did not refer to him by name (she stated instead that the offense occurred "in his house") when she testified as to where the offense occurred, the credibility of her testimony is weakened to the point that we must hold that the evidence is insufficient to establish venue. We disagree. M.C.'s failure to identify Appellant by first and last name in her statement about the location of the offense was not damaging to her testimony, as she also testified that her parents dropped her off from school "at his house", and when asked to identify who "his" referred to, stated, "Victor." Additionally, the record is

6

not confusing or ambiguous as to whom M.C. referred when she testified that the offense occurred "in one of his bedrooms." Accordingly, we reject Appellant's argument.

Appellant next contends that the testimony offered by the nurse practitioner, Onyinanya, that M.C. told her that the offense occurred on M.C.'s trip to Mexico, conflicts with M.C.'s own testimony that the offense occurred at Appellant's house in Tarrant County. He urges us to determine that this conflict so weakens the evidence to show venue in Tarrant County as to render it insufficient. Though Onyinanya's testimony indeed conflicts with M.C.'s, such conflicts concerning venue are questions of fact for the jury, and the jury's resolution of such conflicts should not be disturbed on appeal. *Holdridge*, 707 S.W.2d at 22 n.4; *Smith v. State*, No. 14-02-00554-CR, 2003 WL 22145098, at *3 (Tex.—App. Houston [14th Dist.] Sept. 2003, no pet.) (mem. op., not designated for publication). Further, in reviewing a venue finding, we view all of the evidence in the light most favorable to an affirmative venue finding. *Williams*, 356 S.W.3d at 518; *Vanschoyck*, 189 S.W.3d at 336. Under this standard of review, we hold that the evidence was sufficient to permit a rational jury to find the offense occurred in Tarrant County, and we overrule Appellant's first point.

## Identity

In his second point, Appellant argues that the evidence is insufficient to prove he was the perpetrator. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most

7

favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

Appellant first argues that M.C.'s failure in court to "identify her attacker by name" gives rise to a "lack of clarification" that he in fact committed the offense.

8

Appellant notes that M.C. never used Appellant's last name when referring to him and argues that "it would be irrational to assume that the testimony given by M.C. always referred to [Appellant] because in this case M.C. is a fifteen-year-old child. An adult understanding of questions and their context should not be presumed." As support for the proposition that M.C. failed to properly understand the questions she was asked at trial, Appellant points to M.C.'s statement that she was not related to Appellant, a technically correct answer to the question posed ("Are you related to [Appellant]?"), since Appellant is M.C.'s step-uncle, but one that Appellant alleges misses the question's less restrictive and intended meaning. Appellant emphasizes the tendency of opposing counsel not to use Appellant's name in favor of "he" or "your uncle" and asserts that this lack of specificity further confuses the issue of who the witnesses and parties were speaking of at trial. Appellant contends that these ambiguities are serious enough to render the evidence insufficient to permit a rational jury to find beyond a reasonable doubt that he committed the offense.

We disagree that the ambiguities, if any, generated by the use of terms other than Appellant's name to identify him were serious enough to prevent a rational jury from finding that Appellant committed the crime beyond a reasonable doubt. On review of the record, we are left with no uncertainty that the testimony at trial did in fact refer to Appellant and no other person. M.C. twice identified Appellant in court by pointing to him, and on one of those occasions she identified him by first name and as "my uncle." The State also identified

9

Appellant by first name or "your uncle" in several of its questions to M.C. at trial. There is no evidence that M.C. had another uncle named Victor, that another uncle touched her in a sexual manner, or that anyone else named Victor touched her in a sexual manner, and by extension, no reason to think anyone other than Appellant was the person discussed at trial.

M.C.'s alleged misinterpretation of the question, "Are you related to him?" to which she answered "No," does not seem to us a misconstruction of the question posed to her, as Appellant asserts. Further, there is no evidence that M.C. misunderstood other, more critical queries during the course of trial. Appellant attempts to use M.C.'s age to impeach the evidence supporting his conviction beyond the point of plausibility. We note also that the vast majority of the questions M.C. was asked were basic and easily understandable, such as "What did his hand do when he touched your vagina?" and "Why did you decide to tell your grandmother?" These questions are well within the comprehension of a fifteen-year-old child. Additionally, there is no evidence that M.C. had any learning or comprehension problems; the evidence points to the contrary: M.C. was on the "A-B honor roll" at her school, an indication that she fully understood the questions asked. In the absence of any evidence supporting the contention that M.C. misconstrued questions posed to her at trial, Appellant's argument amounts to mere speculation and does not foreclose the conclusion that a rational jury could find that Appellant committed the offense beyond a reasonable doubt.

Appellant directs us to no case law supporting his arguments for reversal on the grounds of insufficiency of the evidence. His implication that it is seriously unclear whether he, rather than another person, was the perpetrator spoken of at trial does not render the evidence insufficient. We therefore reject Appellant's first argument as to the sufficiency of the evidence to support the jury's finding that Appellant committed the crime beyond a reasonable doubt.

Appellant next contends that the evidence presented at trial not only is insufficient but "clears" him of the crime entirely. Appellant argues that although M.C. recognized her uncle's house as it was depicted in the State's photograph, the prosecution did not ask her if the assault occurred at the house in the picture. Appellant emphasizes M.C.'s inability to remember precisely what year the offense took place, how much time elapsed between the offense and M.C.'s trip to Mexico where she made an outcry statement to her grandmother, and how long the trip to Mexico was. Appellant notes that Steven Langford testified that M.C. gave him "no specifics" when she told him that "something had happened." Finally, Appellant reminds us that the pediatric nurse practitioner's testimony that M.C. said the offense occurred during a trip to Mexico that Appellant did not make conflicts with M.C.'s testimony that the offense occurred at Appellant's house in Tarrant County. For all these reasons, Appellant argues, the evidence is insufficient to support the jury's finding that he was the person who committed the offense. Appellant further theorizes that the crime was perpetrated in Mexico

11

"by another of [M.C.'s] uncles, which is why she reported it after returning from Mexico."

Although Appellant correctly identifies a number of reasons why a jury might question the credibility of the witnesses' testimony, we disagree that these conflicts are serious enough to render the evidence insufficient to permit a rational jury to find beyond a reasonable doubt that Appellant committed the offense. The lapses in M.C.'s recollection concerning what year the offense occurred, how much time passed between the offense and her trip to Mexico, and how long the trip to Mexico lasted are not unreasonable, given that the offense occurred around 2006 and M.C. was asked to recollect the events five or six years later, in 2012. If anything, M.C.'s memory gaps affected the credibility and weight of her testimony. It is the role of the factfinder to evaluate the credibility of the evidence, and where the factfinder could have found the defendant guilty beyond a reasonable doubt, the court of appeals is to leave the factfinder's verdict undisturbed. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury in this case resolved the questions regarding the weight and credibility of M.C.'s testimony in favor of the State, and because it could reasonably have done so, we are not permitted to substitute a contrary judgment in its place.

Furthermore, the conflict between M.C.'s testimony that the offense occurred in Appellant's house in Fort Worth and the nurse practitioner's

testimony that M.C. told her the offense occurred in Mexico does not preclude the jury from finding beyond a reasonable doubt that Appellant committed the offense. Although a reviewing court is authorized to disagree with the jury's determination, due deference must be given to the factfinder's determinations concerning the weight and credibility of the evidence.[2]

In support of this conclusion, we first note that the nurse practitioner's testimony that M.C. told her that the offense took place in Mexico is an isolated statement, nowhere corroborated by other evidence or testimony. All other testimony locates the offense at Appellant's house in Fort Worth. Secondly, the nurse practitioner also testified that when M.C. told her that the offense occurred in Mexico, M.C. told her later in the same conversation that, "It always happened at his house and Mom and Dad were at work." M.C.'s statements to the nurse practitioner thus do not differ entirely from the rest of the trial testimony. The nurse practitioner's statement that M.C. said the offense occurred in Mexico merely calls into question the weight of the testimony that the event took place in Fort Worth, and the jury could reasonably have resolved that conflict in favor of the prosecution, and found beyond a reasonable doubt that Appellant committed the offense.

---

[2] We note also that M.C.'s testimony that Appellant penetrated her with his hand by touching her vagina conflicts with the nurse practitioner's testimony that M.C. told her that Appellant touched her "on top" of her genital area. We find that this conflict in testimony is not substantial enough to warrant reversal for many of the same reasons that reversal on the basis of testimonial conflict about the location of the offense is insufficient to require reversal.

We also reject Appellant's alternative theory that M.C. was assaulted by another uncle during her summer trip to Mexico, a theory that Appellant asserts explains the nurse practitioner's testimony that M.C. said the offense took place in Mexico. Even assuming that Appellant's version would explain the isolated statement to the nurse practitioner, it would not explain the remaining testimony and evidence that the offense occurred at Appellant's home in Fort Worth. Secondly, there is no evidence that M.C. was touched inappropriately by another uncle or by another man named Victor, or that M.C. had another relative named Victor or even knew another man named Victor. Because Appellant's theory is not based on evidence in the record, it is not reasonable and is accordingly rejected. *See Richardson v. State*, 973 S.W.2d 384, 387 (Tex. App.—Dallas 1998, no pet.). We conclude that the evidence is sufficient to permit a rational jury to find beyond a reasonable doubt that Appellant committed the offense, and we overrule Appellant's second point.

## Conclusion

Having overruled Appellant's two points, we affirm trial the court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 14, 2014