

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00140-CR

_____

BRYANT ANTHONY MAXIE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 276th District Court
Morris County, Texas
Trial Court No. 10,754CR

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

## MEMORANDUM OPINION

Bryant Anthony Maxie was convicted by a jury of stalking, a third degree felony offense. Because Maxie pled true to the State's enhancement paragraph, the offense of stalking was punishable as a second degree felony, resulting in an enhanced sentence of twenty years' imprisonment. Maxie appeals[1] his conviction on the grounds that the evidence was insufficient to sustain his conviction and that the trial court erred in submitting the wrong instruction to the jury on the effect of parole law during punishment. We conclude that the evidence was sufficient to establish the offense of stalking and that error with respect to the parole instruction was harmless. Accordingly, we affirm the trial court's judgment.

## I.     Sufficient Evidence Supported the Conviction

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of stalking beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

---

[1]Maxie separately appeals two convictions of robbery in cause numbers 06-12-00138-CR and 06-12-00139-CR.

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The State's indictment alleged that Maxie committed the offense against nineteen year-old Rachel Peck as defined by Section 42.072 of the Texas Penal Code:

> A person commits the felony offense if that person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct, that: (1) the actor knows or reasonably believes the other person will regard as threatening: (A) bodily injury or death for the other person . . . ; and (3) would cause a reasonable person to fear: (A) bodily injury or death for himself or herself.

TEX. PENAL CODE ANN. § 42.072(a) (West Supp. 2012). Maxie argues only that "the evidence is too weak to establish that he possessed the requisite culpable mental state because he could not have known or reasonably believed that Rachel Peck or her brother would regard his conduct as threatening bodily injury or death." We conclude otherwise.

Rachel's father, Brian Peck, was the pastor of a church which Maxie sporadically visited. Peck would occasionally provide Maxie with money when he asked for assistance. Prior to the alleged stalking incident, Peck informed Maxie that he was going on vacation with his wife and would not be home for the next few days. Maxie took advantage of this opportunity. He knocked on the door of the Peck family residence at 11:00 p.m. on September 15, 2011. Rachel's twelve year-old brother, Joseph Peck, opened the door. Joseph testified that he was

3

fearful of Maxie, who demanded money. Joseph retrieved his life-savings of sixty dollars and gave it to Maxie in hopes of appeasing him.

Rachel testified:

It was just me and my little brother at the house. I was back in my room doing something, and my little brother came to me and said there was a man at the door . . . and he wouldn't leave. So he came to get me. And when I went out there, it was him . . . wanting money, and he wasn't leaving until he got some.

Rachel testified that she was afraid that Maxie might have a weapon or that bodily injury could occur if she did not give Maxie any money. She told Maxie "my parents aren't home, that he'd have to come back," but Maxie did not leave. Rachel testified that she allowed Joseph to give Maxie the sixty dollars "[s]o he would leave and hopefully not come back," adding "[w]e were afraid."

Maxie left, but returned to the house at "[a]bout 1:00 in the morning." Rachel answered the door and asked Maxie to leave. Instead, Maxie entered the house, "sat on the stool by the counter top in the kitchen," and demanded more money. Rachel gave him money "[b]ecause I wanted him to leave. I was afraid." Maxie left, but returned again around 6:00 a.m. By this time, Rachel had called a male friend to come over to help protect her and Joseph. After unsuccessful demands for money were made of both Rachel and her friend, Maxie finally left.[2]

---

[2]There is no evidence suggesting that Maxie made any verbal threats or exhibited a deadly weapon. However, Rachel was afraid that Maxie might have a weapon.

On more than one occasion and pursuant to the same scheme or course of conduct, Maxie knowingly[3] directed his actions towards Rachel by knocking on the door of the Peck residence late at night and early in the morning for the purpose of demanding money. Proof of a culpable mental state invariably depends on circumstantial evidence and may be inferred from any facts tending to prove its existence, including the acts, words, and conduct of the accused. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). Maxie chose to demand money from the nineteen year-old Rachel during a time when Maxie knew that her parents were not home. When Rachel opened the door the second time, Maxie "stepped in a little bit where I couldn't shut [the door] all the way." He entered the house, sat in the kitchen, and would not leave until Rachel retrieved money for him. Rachel's directives to leave, which the jury could have interpreted as a manifestation of her fear, were not heeded by Maxie. Given the hour and circumstances, the jury was free to find that Maxie reasonably believed that Rachel would regard his actions as threatening bodily injury or death. Further, under these circumstances, the jury could find that Maxie's actions would cause a reasonable person to fear bodily injury.

We find that the evidence was legally sufficient to establish the offense of stalking. Maxie's first point of error is overruled.

## II. Error in the Parole Instruction Was Harmless

Our review of error in this jury charge involves a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim.

---

[3]"A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." TEX. PENAL CODE ANN. § 6.03(b) (West 2011).

5

App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). Initially, we determine whether error occurred, and then, if so, evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32.

A trial court must submit a charge setting forth the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

Tracking the statutory language of Article 37.07, Section 4(b), the trial court's charge on punishment instructed the jury that:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

*See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(b) (West Supp. 2012).

The Texas Code of Criminal Procedure "specifically sets out three lengthy, alternative jury charges concerning the parole law; and those are to be chosen based on a very exacting and at least potentially confusing set of conditions." *Stewart v. State*, 293 S.W.3d 853, 855 (Tex. App.—Texarkana 2009, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a)–(c) (Vernon Supp. 2008)). "Depending on the offense of which a defendant has been convicted, whether his . . . sentence is to be enhanced, and whether a deadly-weapon finding has been made . . . , the trial court is to select which one of the three alternatives will be given to the jury." *Id.* at

6

855–56. Here, Maxie argues that the charge was "based on the wrong statute, Art. 37.07(4)(b), rather than the correct paragraph Art. 37.07(4)(c)."

Maxie is correct. Article 37.07, Section 4(c) applies

> in the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense is punishable as a felony of the second or third degree, [or] if a prior conviction has been alleged for enhancement as provided by Section 12.42(a), Penal Code . . . .

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(c) (West Supp. 2012). Section 12.42(a) states, "[I]f it is shown on the trial of a felony of the third degree that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a), on conviction the defendant shall be punished for a felony of the second degree." TEX. PENAL CODE ANN. § 12.42(a) (West Supp. 2012). Stalking is a third degree felony offense. TEX. PENAL CODE ANN. § 42.072(b) (West Supp. 2012). Maxie's sentence was enhanced pursuant to Section 12.42(a). TEX. PENAL CODE ANN. § 12.42(a). Therefore, Section 4(c) of Article 37.07 applied to Maxie, as opposed to Section 4(b). The trial court erred in submitting the wrong instruction.

We now decide whether the error was harmful. Maxie did not object to the charge and, therefore, must show egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). "Egregious harm consists of errors affecting the very basis of the case, or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive." *Hill v. State*, 30 S.W.3d 505, 507 (Tex. App.—Texarkana 2000, no pet.). Where a defendant does not object to the charge, reversal is required only if the harm is so egregious that the defendant has not had a fair and impartial trial. *Id.*; *see Almanza*, 686 S.W.2d at 172.

7

We have found error in Article 37.07, Section 4 cases harmful where the trial court instructed the jury that the defendant could become eligible for parole when "the actual time served plus good conduct time equals one-half of the sentence imposed or thirty (30) years, whichever is less," when, in fact, the defendant would not be eligible for parole under Section 4(a) until he had actually served half of the sentence imposed without consideration of good conduct time. *Hill*, 30 S.W.3d at 508. We have held that failure to submit a Section 4 instruction can be harmful where a trial court responds incorrectly to the jury's note, but that general omission of a parole law instruction does not constitute egregious harm. *Vanschoyck v. State*, 189 S.W.3d 333 (Tex. App.—Texarkana 2006, pet. ref'd); *Villarreal v. State*, 205 S.W.3d 103, 107–08 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed); *Rogers v. State*, 38 S.W.3d 725, 729–30 (Tex. App.—Texarkana 2001, pet. ref'd). Thus, the analysis of harm with respect to Article 37.07, Section 4 instructions depends on the nature of the actual submission and the effect that such a submission might have upon the jury.

Understandably, given the nature of the *Almanza* harm analysis, we have also concluded that omissions and variances which have no practical effect, or are "logically inapplicable," are harmless. *Jackson v. State*, No. 06-10-00025-CR, 2010 WL 3636277, at *2 (Tex. App.—Texarkana Sept. 21, 2010, pet. ref'd) (mem. op., not designated for publication).[4] We conclude that the error in the charge falls into this category.

There is only one substantive difference between the two charges. *See Waters v. State*, 743 S.W.2d 753, 757 (Tex. App.—San Antonio 1987, no pet.). Section 4(b) states that a

---

[4]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

defendant will "not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less." Tex. Code Crim. Proc. Ann. art. 37.07, § 4(b). Section 4(c) includes the same language, but omits "15 years, whichever is less." Tex. Code Crim. Proc. Ann. art. 37.07, § 4(c). The maximum punishment of a second degree felony is twenty years, and the maximum punishment for a third degree felony is ten years. Thus, the Section 4(b) additional language is unnecessary because one-fourth of any second or third degree sentence will necessarily be less than fifteen years. Accordingly, Maxie is unable to demonstrate that any harm came from the inclusion of this language, since one-fourth of the sentence imposed here would be less than fifteen years. *See Waters*, 743 S.W.2d at 757.

We conclude that the trial court's error was harmless.

III.     **Conclusion**

We affirm the trial court's judgment.


Jack Carter
Justice


Date Submitted:      March 1, 2013
Date Decided:        March 6, 2013

Do Not Publish

9